WESTON & AGNESS LLP
Aaron C. Agness (State Bar No. 221943)
Shadie Maghareh (State Bar No. 323670)
1960 East Grand Avenue, Suite 400
El Segundo, CA 90245
Telephone:   (213) 596-8000
Facsimile:   (213) 596-8039
E-mail:      aagness@westonagnesslaw.com
             smaghareh@westonagnesslaw.com

Attorneys for Defendant,
THE BURLINGTON INSURANCE
COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORIZON DAHLIA, LLC, a California limited liability company, | CASE NO. |
| Plaintiff, | **NOTICE OF REMOVAL OF ACTION BY THE BURLINGTON INSURANCE COMPANY PURSUANT TO 28 U.S.C. § 1441(b) (DIVERSITY); EXHIBITS "1" AND "6"** |
| v. | |
| THE BURLINGTON INSURANCE COMPANY, an Illinois corporation, and DOES 1 – 10, Inclusive | [Filed Concurrently with Declaration of Shadie Maghareh and Declaration of Vivek P. Karkun] |
| Defendants. | Complaint Filed: April 17, 2025 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant The Burlington Insurance Company (hereinafter "Burlington") hereby removes to this Court the state court action described below.

1.      On or about April 17, 2025, Plaintiff Horizon Dahlia, LLC ("Plaintiff") commenced an action in the Superior Court of the State of California in and for the County of Los Angeles, titled Horizon Dahlia, LLC v. The Burlington Insurance Company, Case No. 25STCV11283 (hereinafter "State Action").  A true and correct

1

NOTICE OF REMOVAL BY THE BURLINGTON INSURANCE COMPANY

copy of the Complaint in the State Action ("Complaint") is attached hereto as Exhibit "1."

2. On June 18, 2025, Burlington was served with a copy of the Summons and Complaint via personal service. [Declaration of Vivek P. Karkun, ¶ 2.]

3. Burlington removes this action to the Central District of California because the State Action was pending in Los Angeles County Superior Court, located in the Central District.

4. This is a civil action over which this Court has jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Burlington pursuant to the provisions of 28 U.S.C. § 1441(a) and (b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Plaintiff is, and at all relevant times herein was, a California limited liability company, with its principal place of business in El Monte, California. [Declaration of Shadie Maghareh, ¶ 2, Exhibit 2.] All managers or members of Plaintiff are citizens of California, and located in Los Angeles, California. [Declaration of Shadie Maghareh, ¶¶ 2 and 3, Exhibits 2 and 3.]

6. Burlington is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Illinois, and maintains its principal place of business in Hartford, Connecticut. [Declaration of Shadie Maghareh, ¶ 4, Exhibits 4 and 5.]

7. In the State Action, Plaintiff alleges that a vandalism/theft loss occurred at the insured property for which Burlington issued a builder's risk insurance policy covering the property. [Complaint, ¶ 12.] Plaintiff brought the following causes of action against Burlington: 1) Breach of Contract; 2) Bad Faith; and 3) Unfair Competition Bus. & Prof. Code § 17200. Plaintiff contends that Burlington has breached the subject policy in bad faith because Burlington has not yet paid any amount to Plaintiff for its claim for benefits. [Complaint, ¶¶ 17-22, and 27.]

2

NOTICE OF REMOVAL BY THE BURLINGTON INSURANCE COMPANY

Plaintiff prays for compensatory damages, punitive damages, pre-judgment interest, attorneys' fees, and costs.  [Complaint, Prayer for Relief, ¶¶ 1-5.]

8.    Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.  [Declaration of Shadie Maghareh, ¶¶ 3 and 5, Exhibit 3.]

9.    Diversity between Plaintiff and Burlington existed both at the time the action was commenced in state court and at the time of removal.

10.    Removal is timely as it is within thirty (30) days after service of the Summons and Complaint on June 18, 2025.

11.    Attached hereto as Exhibit "6" are true and correct copies of all other notice, process, and proceedings served on Burlington in the State Action.  To the knowledge of Burlington, no hearings have taken place in the State Action.

Dated:  July 17, 2025                    WESTON & AGNESS LLP


                                   By:  /s/ Shadie Maghareh
                                        Aaron C. Agness
                                        Shadie Maghareh
                                        Attorneys for Defendant
                                        THE BURLINGTON INSURANCE
                                        COMPANY

3

NOTICE OF REMOVAL BY THE BURLINGTON INSURANCE COMPANY

SAWYER & LABAR LLP
IVO LABAR, State Bar No. 203492
  *labar@sawyerlabar.com*
REBECCA MACLAREN, State Bar No. 211788
  *maclaren@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

Attorneys for Plaintiff
HORIZON DAHLIA, LLC

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/17/2025 2:46 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Munoz, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| HORIZON DAHLIA, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE BURLINGTON INSURANCE COMPANY, a corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 25STCV11283<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT - INSURANCE;**<br>**(2) BAD FAITH; and**<br>**(3) UNFAIR COMPETITION** (Bus. & Prof. Code § 17200)<br><br><u>**JURY TRIAL DEMANDED**</u> |

COMPLAINT

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415 262 3820
www.sawyerlabar.com

## INTRODUCTION

1.     Defendant The Burlington Insurance Company ("Defendant" or "Burlington") owes Plaintiff Horizon Dahlia LLC ("Plaintiff" or "Horizon") insurance benefits for property damage Plaintiff suffered in September 2023 when its property was extensively damaged.  Instead of promptly paying what is owed, Burlington has engaged in a continuous and systematic practice of delaying, denying and/or lowballing Plaintiff's property damage claim, causing serious additional damage to Plaintiff.  Burlington's unreasonable, bad faith conduct has caused Plaintiff to incur substantial extra-contractual damages in the form of increased material and repair costs, attorneys' fees, public adjuster fees, prejudgment interest and other damages.

2.     Burlington is now ignoring Plaintiff's demands for assistance to conclude its claim, instead sending repeated requests for the same, immaterial claims information that Plaintiff provided to Burlington nearly a year prior.  Burlington's longstanding and ongoing malice, deceit and oppression in handling this claim warrants a substantial and meaningful punitive damages award to deter it from engaging in similar conduct in the future.

## PARTIES

3.     Plaintiff Horizon Dahlia, LLC is a California limited liability company with its primary place of business in Los Angeles County, California.

4.     Defendant The Burlington Insurance Company has been an approved surplus lines insurance carrier in the State of California since November 17, 1995, and regularly conducts business in the State of California.  On information and belief, Burlington is an Illinois corporation.

5.     The true names and capacities of defendants DOES 1 through 10 are unknown and they are therefore sued by fictitious names.  Each of the DOE defendants is, in some manner, responsible for the damages alleged.

6.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, each Defendant was an actual or ostensible agent, servant, manager, employee, co-conspirator, alter ego, and/or joint venturer of the other Defendant, and was at all times acting within the course and scope of that agency, service, management, employment, co-

COMPLAINT

conspiracy and/or joint venture.

## VENUE

7.     Venue is proper in the Superior Court of California for the County of Los Angeles. The allegations and claims for relief set forth herein arise out of unlawful acts committed in Los Angeles County, the contract underlying this suit was formed and breached there, and Defendant transacts business and derive substantial revenue from their activities there.

## BACKGROUND

8.     Plaintiff is the lessee of the property known as 12413, 12421-12423 and 12414 Dahlia Avenue, El Monte, California (collectively, the "Property"). The Property is a multi-building complex which was used by the former tenant as a shelter for women and children escaping domestic violence.

9.     Plaintiff leased the Property in or around May 2023 with plans to renovate it for use as a recuperative health care facility for people facing homelessness after being discharged from a hospital stay. In addition to providing wound and injury care, medication management, monitoring of daily vitals, transportation to and from appointments and prescription pickups for its residents, Plaintiff provides referral services to assist residents with transition to permanent housing and other assistance. Plaintiff was therefore renovating the Property to provide desperately needed services to a vulnerable population in Los Angeles County.

10.     In or around May 2023, Burlington issued a builder's risk insurance policy to Plaintiff, identified as policy number HSI0005545 (the "Policy"). The Policy is attached hereto as Exhibit A. The Policy insured against perils occurring during the rehabilitation and renovation of the Property.

11.     The Policy states a $5,000,000 limit and includes the following coverages, among others: Building Materials Limit - $2,200,000; Existing Building Limit - $4,673,500.

12.     On or about September 15, 2023, the Property was extensively damaged, and valuable materials and elements of the Property were removed (the "incident" or "Loss"). The perpetrators thoroughly stripped the Property of many items of value, including but not limited to damaging doors, tearing gaping holes into the walls, damaging and removing electrical panels and

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE 415 262 3820
www.sawyerlabar.com

components, damaging the HVAC system, and removing copper wiring and plumbing. The damage was extensive and delayed Plaintiff's renovation plan.

13. Plaintiff provided prompt notice of the Loss to Burlington.

14. Burlington assigned the Loss claim number 240131 ("Claim").

15. Plaintiff satisfied all conditions of the Policy, except those that were waived, excused or impossible.

16. Plaintiff submitted a formal proof of claim on or about April 3, 2024. It was ignored by Burlington.

17. In the ensuing years since the Loss, Burlington has delayed payment to Plaintiff despite the fact the Property was heavily damaged.

18. Burlington's investigation of the damage to the Property improper because it was focused on finding a way to justify delaying, and effectively denying, the Claim.

19. Burlington's communication with Plaintiff has also been abysmal. Its adjusters have issued repeated demands for documents and information despite Plaintiff complying with those demands months ago. When Plaintiff pointed out (for the second time) that it had previously provided the requested documents and information, Burlington reissued the same requests for a third time. This time, however, Burlington's adjusters changed the wording of some of the requests in an attempt to make it appear that Plaintiff had not complied with the original requests.

20. Burlington has also illegally stated that Plaintiff has no right to object to any of Burlington's requests for information and documents, and that Plaintiff's Claim will be delayed if Plaintiff continues to object. Burlington has maintained this position despite Plaintiff's repeated representations that it has provided the requested documents and information.

21. Burlington's position constitutes an outrageous misrepresentation of the law to an insured, as Insurance Code section 2071.1 specifically authorizes an insured to object to non-material requests, as is the implied covenant of good faith and fair dealing.

22. In addition, as of the date of this complaint, Plaintiff has requested in writing at least three times that Burlington provide confirmation of coverage and an advance. Burlington has

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE 415.262.3820
www.sawyerlabar.com

done neither.  Instead, upon receipt of the Claim, Burlington violated California law and regulations in the following ways:

   (a)     failing to inform Plaintiff of Policy coverages that may apply to the Loss;

   (b)     failing to respond in a timely fashion to communications from Plaintiff;

   (c)     failing to assist Plaintiff in assessing the damage to the Property;

   (d)     failing to conduct a thorough and objective investigation of the Loss;

   (e)     failing to pay Policy benefits owed for repairs, among other coverages;

   (f)     misrepresenting Policy provisions, coverages, and pertinent facts;

   (g)     applying exclusions and limitations that do not apply or are illegal;

   (h)     forcing Plaintiff to undertake and fund a minimal investigation on its own;

   (i)     forcing Plaintiff to pay for expert reports relating to the damage at the Property;

   (j)     forcing Plaintiff to undertake and fund repairs;

   (k)     failing to substantively respond to Plaintiff's requests that Burlington confirm coverage;

   (l)     failing to respond to Plaintiff's multiple requests that Burlington provide an advance;

   (m)     repeatedly serving Plaintiff with requests for documents and information that Plaintiff provided months prior;

   (n)     serving Plaintiff with a supplemental request for information and documents which mischaracterizes Burlington's prior requests in an attempt to characterize Plaintiff as non-compliant; and

   (o)     forcing Plaintiff to retain counsel and file a lawsuit to compel Burlington's compliance with the law and payment of contract benefits.

23.     Burlington's unreasonable and illegal conduct is designed to harass Plaintiff and exhaust its resources in an attempt to get Plaintiff to abandon its Claim.

**FIRST CAUSE OF ACTION**

**Insurance Breach of Contract**

**(Against The Burlington Insurance Company and Does 1-10)**

24.    The allegations of the preceding paragraphs are re-alleged and incorporated herein.

25.    A valid contract of insurance existed between Plaintiff and Burlington. That contract is attached hereto as Exhibit A.

26.    Plaintiff performed all conditions of the contract by, *inter alia*, paying the premiums, giving Burlington prompt notice of the Claim, and cooperating with the handling of the Claim.

27.    Burlington breached the contract by refusing to promptly pay Plaintiff all benefits which were owed under the Policy. Burlington also breached the Policy by failing to meet its requirement under Insurance Code section 2051, by, *inter alia*, not making a proper actual cash value payment or providing all "claims related documents" when demanded as required by Section 2071.

28.    Because Burlington has refused to pay benefits, Plaintiff has been damaged as described above.

29.    Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**

**Insurance Bad Faith**

**(Against Burlington and Does 1-10)**

30.    The allegations of the preceding paragraphs are re-alleged and incorporated herein.

31.    Burlington and Does 1-10 breached the covenant of good faith and fair dealing in the Policy by, among other things:

(a)    misrepresenting pertinent facts in violation of Insurance Code §790.03(h)(1) and 10 California Code of Regulations §2695.4;

(b)    failing to provide timely and accurate advice to insureds regarding their right to loss of use benefits under the Policy, in violation of California Insurance Code §790.03(h)(1) and 10 California Code of Regulations §2695.4;

COMPLAINT

(c)     failing to timely communicate regarding claims in violation of Insurance Code §790.03(h)(2) and 10 California Code of Regulations §2695.5;

(d)     failing to diligently conduct a fair, thorough, and objective investigation of the claim in violation of Insurance Code §§790.03(h)(3) and 2071.1, and 10 California Code of Regulations §2695.7(d);

(e)     failing to timely affirm or deny coverage in violation of Insurance Code §§790.03(h)(4) and/or improperly denying claims without satisfying the requirements of 10 California Code of Regulations §2695.7;

(f)     failing to pay policy benefits in violation of Insurance Code §790.03(h)(5); and

(g)     requiring insureds to obtain counsel and file a lawsuit in order to obtain amounts owed under the Policy in violation of California Insurance Code §790.03(h)(6).

32.     As a direct and proximate result of Burlington's and Does 1-10's breach of the covenant of good faith and fair dealing by the withholding of benefits under the Policy, Plaintiff lost contract benefits under the Policy, sustained consequential damages, and incurred attorney's fees, expert expenses, and costs in seeking enforcement of its contractual rights.

33.     In doing the things set forth above, Burlington and Does 1-10 acted intentionally with fraud, malice, and oppression, in that they knowingly and intentionally violated Plaintiff's rights under the Policy for the purpose of depriving Plaintiff of the payment of Policy benefits, which in turn was for the purpose of reducing claims expenses and indemnity expenses in order to maximize Burlington's profits.  Plaintiff is therefore entitled to exemplary damages in amount to be proven at trial.  Among other things, Burlington and Does 1-10 did the following, which amount to fraud, malice, and oppression:

(a)     concealed benefits relating to repair of the Property, including actual cash value benefits and replacement cost benefits;

(b)     intentionally failed to provide for adequate repair benefits for the purpose of saving on indemnity expenses for the purpose of maximizing Burlington's profits;

(c)     intentionally failed to conduct an adequate investigation of damage to the Property for the purpose of saving on claims expenses for the purpose of maximizing

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO CA 94111
TELEPHONE 415 262 3820
www.sawyerlabar.com

7

Burlington's profits;

(d)    intentionally failed to provide an advance for the purpose of saving on indemnity expenses for the purpose of maximizing Burlington's profits;

(e)    intentionally served Plaintiff with repeated, harassing requests regarding immaterial matters;

(f)    intentionally served Plaintiff with repeated requests that Plaintiff had responded to months prior;

(g)    intentionally misrepresented Plaintiff's responses to Burlington's prior requests, including altering its own original requests to give the appearance that Plaintiff is not complying; and

(h)    failed to properly respond to an Insurance Code section 2071 claims-related request.

34.    On information and belief, as further evidence that the various acts of bad faith, malice, fraud, and oppression set forth above were done knowingly, deliberately, and intentionally, each of those acts is part of a pattern of institutional bad faith by Burlington and Does 1-10, designed to reduce claims costs and expenses thus maximizing Burlington's profits. Specifically, in the investigation and adjustment of first-party property claims in California, Burlington and Does 1routinely engages in the following acts of bad faith, which violate California law:

(a)    misrepresenting pertinent facts in violation of Insurance Code §790.03(h)(1) and 10 California Code of Regulations §2695.4;

(b)    failing to provide timely and accurate advice to insureds regarding their right to loss of use benefits under the Policy, in violation of California Insurance Code §790.03(h)(1) and 10 California Code of Regulations §2695.4;

(c)    failing to timely communicate regarding claims in violation of Insurance Code §790.03(h)(2) and 10 California Code of Regulations §2695.5;

(d)     failing to diligently conduct a fair, thorough, and objective investigation of the claim in violation of Insurance Code §§790.03(h)(3) and 2071.1, and 10 California Code of Regulations §2695.7(d);

(e)     failing to timely affirm or deny coverage in violation of Insurance Code §§790.03(h)(4) and/or improperly denying claims without satisfying the requirements of 10 California Code of Regulations §2695.7;

(f)     failing to pay policy benefits in violation of Insurance Code §790.03(h)(5); and

(g)     requiring insureds to obtain counsel and file a lawsuit in order to obtain amounts owed under the Policy in violation of California Insurance Code §790.03(h)(6).

35.     On information and belief, Burlington's executive C- level officers and claims personnel (including outside claims adjusters) who participated in the investigation and adjustment Plaintiff's Claim are part of Burlington's institutional bad faith and have themselves engaged in each of the foregoing practices deliberately designed by Burlington to reduce indemnity costs and claims expenses for the purpose of maximizing its profits.  This has led to extracontractual damages in the form of increased cost of construction, prejudgment interest and other damages.

36.     Burlington's President (Elizabeth Monrad), Burlington's Senior Vice President/Chief Claims Officer (John Mahoney), and Burlington's claims agents (Rina Carmel, and others), either made, authorized, or ratified each of the investigation, claims handling, and payment decisions vis-à-vis Plaintiff's Claim.  Indeed, Ms. Carmel was personally aware of Plaintiff's plight, as documented in email communication.  She oppressively, consciously and maliciously ignored Plaintiff's rights.

37.     Each of these individuals are managing agents of Burlington pursuant to Civil Code section 3294 because they exercised substantial independent authority and judgment in their corporate decision-making such that their decisions ultimately determined corporate policy for Plaintiff's claim.  Accordingly, Burlington is liable for punitive damages.

38.     Plaintiff prays for relief as set forth below.

COMPLAINT

## THIRD CAUSE OF ACTION

### Unfair Competition - Business and Professions Code §17200

### (Against Burlington and Does 1-10)

39.    The allegations of the preceding paragraphs are re-alleged and incorporated herein.

40.    California Business and Professions Code §17200 (the "Unfair Competition Law" or the "UCL") prohibits acts of unfair competition, including any unlawful, unfair, or fraudulent business practice or act.

41.    California Business & Professions Code §17204 sets forth the standing requirements for an unfair competition action.  It provides that one may pursue such an action if the person "suffered injury in fact and has lost money or property as a result of unfair competition."

42.    Plaintiff has standing in this action because it suffered an injury in fact and lost money or property resulting from Burlington's conduct.

43.    Burlington and Does 1-10 engaged in the conduct described above as part of an unlawful, unfair, and fraudulent business practice.  Burlington and Does 1-10's conduct was illegal in that it violated California Insurance Code sections 790.03 and 2701.1, and 10 California Code of Regulations sections 2695.4, 2695.5 and 2695.7, in the ways described above.  It was unfair in that violates the same statutory and regulatory provisions, and it was fraudulent because its conduct is likely to deceive members of the public.

44.    As a proximate result of Burlington and Does 1-10's violation of the UCL, Plaintiff has suffered economic injury-in-fact.

45.    As a result of the conduct described herein, Plaintiff seeks a court order awarding restitution, an order enjoining Burlington and Does 1-10 from violating the above-referenced statutes and an order enjoining Burlington and Does 1-10 from denying full benefits for the Loss in compliance with California law.

46.    Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For general, special, economic, and consequential damages;

2. For *Brandt* attorneys' fees;

3. For pre-judgment interest as provided by law;

4. For punitive damages according to proof;

5. For costs according to proof; and

6. Such other relief as the Court deems just and proper.

DATED: April 17, 2025                    SAWYER & LABAR LLP

By: _____
Ivo Labar
Attorney for Plaintiff
HORIZON DAHLIA LLC

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury.

DATED: April 17, 2025                    SAWYER & LABAR LLP

By: _____
Ivo Labar
Attorney for Plaintiff
HORIZON DAHLIA LLC

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE 415 262 3820
www.sawyerlabar.com

11
COMPLAINT

# EXHIBIT A

**IFG Companies**

**COMMON POLICY DECLARATIONS**

**THE BURLINGTON INSURANCE COMPANY**

Home Office, Administrative Office and Claim Office
City Place II, 185 Asylum Street, 7th Floor, Hartford, CT  06103

**Policy Number**
HSI0005545

**Renewal of:**
NEW

---

**Item 1.** Named Insured and Mailing Address                                     Co. Use:YRS

| | |
|---|---|
| Horizon Dahlia LLC<br><br>4221 Wilshire Boulevard<br>Los Angeles, CA  90010 | Hull & Company, LLC<br><br>11405 N. Community House Rd.<br>Suite 100<br>Charlotte, NC 28277-2747<br>Code: 0306<br>Surplus Lines Broker License No: OF60641 |

**Item 2.** Policy Period          Effective Date:  05/19/23     Expiration Date:  05/19/24
at 12:01 A.M., Standard Time at your mailing address shown above.

**Item 3.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage.

| Coverage Part(s) | Premium | |
|---|---|---|
| Commercial Inland Marine | $ | 41,125 |
| | $ | |
| | $ | |
| | $ | |

| Other Charges (if applicable) | Total Policy Premium or Deposit Premium | $ | 41,125 |
|---|---|---|---|
| | Total Other Charges | $ | 500 |

| Inspection Fee: | $ 500.00 | Total Amount Due* | $ | 41,625 |
|---|---|---|---|---|

*Premium is:  X  Flat  _____ Auditable

In the event you cancel this policy, we will retain a minimum earned premium. See IFG-I-0168.

**Item 4.** Forms and Endorsements applicable to this policy:  See "Listing of Forms and Endorsements" (IFG-I-0150)

**Item 5.** Form of Business.    _____ Individual        _____ Partnership        _____ Joint Venture
X  Limited Liability Company    _____ Other Organization, including a Corporation
_____ Trust

Business Description:

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

---

**This insurance is issued pursuant to the CA Insurance Code, Sections 1760 through 1780, and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.**

Countersigned:
Date: _____          By: _____
Issue Date:   06/30/2023                          Authorized Representative

IFG-I-0101a 03 18                    Insured Copy                    Page 1 of 1

POLICY NUMBER: HSI0005545

POLICY PERIOD:        05/19/2023                    05/19/2024
                      Effective Date               Expiration Date

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LISTING OF FORMS AND ENDORSEMENTS

This listing forms a part of the following:

### Commercial Inland Marine Policy

| NUMBER | TITLE |
|---|---|
| CL 0100 03 99 | Common Policy Conditions |
| CL 0162 01 19 | Amendatory Endorsement California |
| CL 0700 10 06 | Virus of Bacteria Exclusion |
| CL 0620 03 15 | Certified Act of Terrorism Exclusion |
| D 2 01 20 | California Surplus Lines Notice |
| | |
| IFG-I-0002 08 21 | Policy Cover Page (TBIC) |
| IFG-I-0101a 03 18 | Common Policy Declarations |
| IFG-I-0168 06 05 | Minimum Earned Premium Endorsement |
| IFG-I-0150 03 03 | Listing of Forms and Endorsements |
| IFG-I-0408 01 17 | California Service of Suit Amendment |
| | |
| IFG-SM-0100 11 15 | Inland Marine Common Declarations Supplemental |
| IFG-SM-0266 11 21 | Exclusion – Cyber Incident |
| IFG-SM-0032 08 16 | OFAC Policyholder Notice |
| IFG-SM-2053 04 19 | Cannabis Exclusion |
| | |
| IM 7050 08 12 | Builders risk Coverage – Scheduled Jobsite Form – Comprehensive Form |
| IM 7055 01 12 | Schedule of Coverages - Builders' Risk – Comprehensive Form |
| IM 7083 08 10 | Equipment Breakdown and Testing Coverage |
| IM 7095 01 12 | Equipment Breakdown and Testing Schedule |
| IM 7070 08 12 | Rehabilitation and Renovation Coverage Endorsement |
| IM 7970 08 12 | Rehabilitation and Renovation Schedule |
| M 7853 09 08 | Protective Devices Endorsement |
| IM 7904 01 12 | Protective Devices Schedule |
| IM 2009 09 15 | Amendatory Endorsement – California |
| | |
| SIM 0999 04 18 | Claim Reporting Information |

IFG-I-0150 03 03                                                        Page  1 of 1

**POLICY NUMBER:** HSI0005545

# INLAND MARINE COMMON DECLARATIONS - SUPPLEMENT

This Inland Marine Coverage Part consists of the following coverage forms for which a premium is indicated.

| Inland Marine Coverage Part(s) | Premium |
|---|---|
| **Bailees Customers Floater** | $ |
| **Builders Risk** | $ 40,750 |
| **Contractors Equipment** | $ |
| **Difference in Conditions** | $ |
| **Electronic Data Processing** | $ |
| **Equipment Sales and Rental** | $ |
| **Fine Arts Dealers** | $ |
| **Fine Arts Floater** | $ |
| **Installation Floater** | $ |
| **Miscellaneous Floaters** | $ |
| **Miscellaneous Coverages** | $ |
| **Motor Truck Cargo** | $ |
| **Museums** | $ |
| **Radio and Television Towers & Equipment** | $ |
| **Renewable Energy Generating Equipment** | $ |
| **Riggers' Coverage** | $ |
| **Transit** | $ |
| **Vehicle Physical Damage** | $ |
| **Warehouse Legal Liability** | $ |
| **Equipment Breakdown Coverage** | $ 375 |
| **Excess Inland Marine** | $ |
| **Commercial Property** | $ |
| **Other Coverage Parts (list)** | |
| Total Inland Marine Premium: | $ 41,125 |
| | |
| Inland Marine Coverage Part Minimum Premium (if applicable) | $ 41,125 |

**FORMS APPLICABLE TO THIS COMMERCIAL INLAND MARINE COVERAGE PART:**

See Listing of Forms and Endorsements, IFG-I-0150.

These Declarations are part of the common policy declarations containing the name of the insured and the policy period.

IFG-SM-0100 11 15                                                    Page 1 of 1

# NOTICE:

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED

4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE TOLL-FREE NUMBER 1-800-927-4357 OR INTERNET WEBSITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO VISIT THE NAIC'S INTERNET

WEBSITE AT WWW.NAIC.ORG. THE NAIC--THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS--IS THE REGULATORY SUPPORT ORGANIZATION CREATED AND GOVERNED BY THE CHIEF INSURANCE REGULATORS IN THE UNITED STATES.

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER. YOU CAN FIND A LINK TO EACH STATE FROM THIS NAIC INTERNET WEBSITE:

HTTPS://NAIC.ORG/STATE_WEB_MAP.HTM.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A "LIST OF APPROVED SURPLUS LINE INSURERS (LASLI)." ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEBSITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV/01-CONSUMERS/120-COMPANY/07-LASLI/LASLI.CFM.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE EFFECTIVE IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

D-2 01 20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA
# SERVICE OF SUIT AMENDMENT

The Company has designated the following resident agent to be its true and lawful attorney upon whom may be served all lawful process in any action, suit or proceeding in the State of California.

Ms. Karissa Lowry

Corporation Service Company Which Will Do Business in California as CSC-Lawyers Incorporating Service

2710 Gateway Oaks Drive

Suite 150N

Sacramento, CA 95833

**All other terms and conditions of this Policy remain unchanged.**

**AAIS**
**CL 0100 03 99**
**Page 1 of 1**

# COMMON POLICY CONDITIONS

1. **Assignment** -- This policy may not be assigned without "our" written consent.

2. **Cancellation** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   "We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the "terms" of this policy must be issued by "us" in writing to be valid.

4. **Inspections** -- "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records** -- "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

---

**CL 0100 03 99**
Copyright, American Association of Insurance Services, 1998

AAIS
CL 0162 01 19
Page 1 of 3

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## CALIFORNIA

1. Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation And Nonrenewal**

a. "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

b. "We" may cancel or not renew this policy by delivering or mailing written notice to the producer of record and to "you" at "your" mailing address last known to "us". "Our" notice will state the reason for the cancellation or nonrenewal. Proof of delivery or mailing is sufficient proof of notice.

c. If this policy has been in effect for 60 days or less, "we" may cancel for any reason. "We" will give "you" notice at least 10 days before the cancellation is effective. "Our" notice will state the date on which the cancellation is effective. Such notice may be delivered by electronic means if "you" have affirmatively consented to that method of delivery and have not withdrawn such consent.

d. If this policy has been in effect for more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel only for one or more of the following reasons:

   1) nonpayment of premium;
   2) there has been a judgment by a court or an administrative tribunal that "you" have violated a law of this state or the United States involving an act that materially increases a hazard insured against;

   3) there has been a discovery of fraud or material misrepresentation committed by:

      a) a person insured under this coverage or his or her representative in obtaining this insurance; or
      b) "you" or "your" representative in pursuing a claim under this policy;

   4) there has been a discovery of willful or grossly negligent acts or omissions, or of violations of state laws or regulations establishing safety standards by "you" or "your" representative, that materially increase a hazard insured against;
   5) there has been a failure by "you" or "your" representative to implement reasonable loss control requirements to which "you" agreed as a condition of the issuance of this policy, or which were required in order to qualify for a particular rate or rating plan, if the failure materially increases a hazard insured against;
   6) the Insurance Commissioner has determined that loss of, or changes in, "our" reinsurance would threaten "our" financial integrity or solvency;
   7) the Insurance Commissioner has determined that a continuation of this policy would place "us" in violation of the law or that continuation of coverage would threaten "our" solvency; or
   8) there has been a change made by "you" or "your" representative in the activities or property which has resulted in a materially added, increased, or changed hazard that is not included in the policy.

CL 0162 01 19        Copyright, American Association of Insurance Services, Inc., 2019        AAIS

**AAIS**
**CL 0162 01 19**
**Page 2 of 3**

If "we" cancel this policy for nonpayment of premium or fraud, "we" will give "you" notice at least 10 days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days before cancellation is effective. "Our" notice will state the date on which the cancellation is effective. Such notice may be delivered by electronic means if "you" have affirmatively consented to that method of delivery and have not withdrawn such consent.

e.  "Your" return premium, if any, will be calculated on a pro rata basis and will be refunded at the time of cancellation or within 80 business days of cancellation unless this policy is subject to audit. If this policy is subject to audit, it will be refunded to "you" within 80 business days of the date "you" provide all information needed to conduct an audit. Payment or tender of the unearned premium is not a condition of cancellation.

f.  If we decide not to renew this policy, "we" will give "you" notice at least 60 days, but not more than 120 days, before the nonrenewal is effective.

    However, notice of nonrenewal is not required if:

    1)  this policy is transferred to or renewed by another insurer in "our" insurance group without changing policy "terms" or the rate on which the premium is based;
    2)  the policy has been extended for 90 days or less after notice was given in accordance with the requirements of this condition;
    3)  "you" have obtained replacement coverage or have agreed in writing to obtain replacement coverage within 60 days of the termination of this policy;

    4)  this policy was issued for a term of 60 days or less and "you" were notified when the policy was issued that it would not be renewed;
    5)  "you" request a change in "terms" or hazards covered within 60 days of the end of the policy period; or
    6)  in accordance with the requirements of this condition, "we" have made a written offer to renew the policy with changed "terms" or at a change to the rate on which the premium is based.

g.  If this policy covers a one- to four-family dwelling used predominantly for residential purposes, except in cases in which "you" terminate the policy, "we" may not cancel or not renew this policy solely:

    1)  because "you" have accepted "our" offer of earthquake coverage; or
    2)  because of corrosive soil conditions, if this policy contains an exclusion relating to that peril; or
    3)  because the dwelling is located in an area in which a wildfire has occurred and a state of emergency, as defined in Section 8558 of the Government Code of California, has been declared in response, but only to the extent such cancellation or nonrenewal is prohibited by Section 675.1(b) of the California Insurance Code.

h.  If this policy covers a one- to four-family dwelling used predominantly for residential purposes and if, in accordance with California law, "you" have designated an additional person to receive notice of the nonrenewal or cancellation of this policy for nonpayment of premium, "we" will give notice to such person at least 10 days before the nonrenewal or cancellation is effective. Such notice will be sent by first-class United States mail, postage prepaid, to the address provided by "you" within 10 days after the date on which the premium is due and unpaid.

   Copyright, American Association of Insurance Services, Inc., 2019   **AAIS**

**AAIS**
**CL 0162 01 19**
**Page 3 of 3**

Except as provided above, no person designated by "you" to receive notice of the nonrenewal or cancellation of this policy for nonpayment of premium has any rights, whether as an additional insured or otherwise, to any benefits under this policy.

2. Under Common Policy Conditions, the following condition is added:

   **Conditional Renewal** – If "we" condition the renewal of this policy upon:

   a. a reduction in "limits";

   b. an elimination of coverage;

   c. an increase in deductibles; or

   d. a rate increase of more than 25%;

"we" will deliver or mail written notice to the producer of record and to "you", at the mailing address shown in the policy, at least 60 days, but not more than 120 days, before the end of the policy period. Such notice may be delivered by electronic means if "you" have affirmatively consented to that method of delivery and have not withdrawn such consent. Proof of delivery or mailing is sufficient proof of notice.

**CL 0162 01 19**

Copyright, American Association of Insurance Services, Inc., 2019   **AAIS**

**AAIS**
**CL 0700 10 06**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# VIRUS OR BACTERIA EXCLUSION

## DEFINITIONS

### Definitions Amended --

When "fungus" is a defined "term", the definition of "fungus" is amended to delete reference to a bacterium.

When "fungus or related perils" is a defined "term", the definition of "fungus or related perils" is amended to delete reference to a bacterium.

## PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

1.  The following exclusion is added under Perils Excluded, item 1.:

    **Virus or Bacteria --**

    "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

a.  any contamination by any virus, bacterium, or other microorganism; or

b.  any denial of access to property because of any virus, bacterium, or other microorganism.

2.  **Superseded Exclusions --** The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

## OTHER CONDITIONS

### Other Terms Remain in Effect --

The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

**CL 0700 10 06**

Copyright, American Association of Insurance Services, Inc., 2006

**AAIS**
**CL 0620 03 15**
**Page 1 of 2**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# CERTIFIED ACT OF TERRORISM EXCLUSION
# (WITH LIMITED EXCEPTION)

1.  The following definitions are added.

    a.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

        1)  to be an act of terrorism;
        2)  to be a violent act or an act that is dangerous to human life, property, or infrastructure;
        3)  to have resulted in damage:

            a)  within the United States; or
            b)  to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

        4)  to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and
        5)  to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

    b.  "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2.  The following exclusion is added.

    **CERTIFIED ACT OF TERRORISM EXCLUSION**

    "We" will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism".

    **Fire Exception** -- If a "certified act of terrorism" results in fire, "we" will pay for the loss or damage caused by that fire. This exception for fire applies only to direct loss or damage by fire to covered property. This exception does not apply to coverage for loss of earnings, extra expense, or fire legal liability.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

Copyright, American Association of Insurance Services, Inc., 2015

**AAIS**
**CL 0620 03 15**
**Page 2 of 2**

3.  The following provisions are added.

    a.  Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:

        1)  exclusions that address war, military action, or nuclear hazard; or
        2)  any other exclusion; and

    b.  the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:

        1)  exclusions that address war, military action, or nuclear hazard; or
        2)  any other exclusion.

**CL 0620 03 15**

Copyright, American Association of Insurance Services, Inc., 2015

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM PREMIUM

A minimum premium is the lowest amount to be retained as premium.   Minimum premium amounts ("Minimum Premium(s)") are itemized by coverage parts ("Coverage Part(s)"), the total of which is shown as the Policy Minimum Premium.    If the policy is auditable, the amount paid as an advance or deposit premium for the applicable Coverage Part(s) equals the Minimum Premium. The policy, whether auditable or non-auditable (flat), is subject to our retaining the Minimum Premium(s) as follows:

## A.  AUDITABLE POLICIES

Full Term: We will retain one hundred percent (100%) of the Minimum Premium(s) for the Coverage Part(s). In addition, the results of an audit will determine if any additional premium over the Minimum Premium(s) for the Coverage Part(s) may be due.

Mid-Term Cancellations: The results of an audit will determine if any additional premium over the Minimum Premium(s) for the Coverage Part(s) may be due. If no additional premium is due, the Minimum Premium(s) for the Coverage Part(s) will be retained as follows:

1.  If the first Named Insured or anyone with his, her, its or their power of attorney, including a premium finance company, cancels this policy or a Coverage Part:

    a.  Within ninety (90) days from the effective date: We will retain twenty-five percent (25%) of the Minimum Premium(s) for the Coverage Part(s).

    b.  After ninety (90) days from the effective date: The Minimum Premium(s) for the Coverage Part(s) will be calculated based upon the number of days coverage was in effect.   Unless prohibited by law, your return premium will be reduced by applying a short rate penalty in the amount of ten percent (10%) to the unearned premium.

2.  If we cancel under the terms and conditions of this policy:

    a.  Within ninety (90) days from the effective date: We will retain twenty-five percent (25%) of the Minimum Premium(s) for the Coverage Part(s).

    b.  After ninety (90) days from the effective date: The Minimum Premium(s) for the Coverage Parts(s) will be calculated based upon the number of days coverage was in effect.  The unearned premium, or your return premium, will be calculated using a pro rata method of cancellation.  Unless prohibited by law, cancellation for non-payment of premium shall be deemed cancellation by the first Named Insured and your return premium will be reduced by applying a short rate penalty in the amount of ten percent (10%) to the unearned premium.

## B.  NON-AUDITABLE POLICIES (FLAT)

Full Term: We will retain one hundred percent (100%) of the Minimum Premium(s) for the Coverage Part(s).

Mid-Term Cancellations:  If the policy or a Coverage Part is cancelled mid-term, the Minimum Premium(s) for the Coverage Part(s) will be retained in the same manner as set forth above in Sections 1 and 2 for Mid-Term Cancellations for Auditable Policies.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**IFG-SM-0032 08 16**
**Page 1 of 1**

## IMPORTANT POLICYHOLDER NOTICE

## OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

This notice does not replace your policy provisions.   Please read your policy for complete information on the coverages that you are provided.

This notice is to inform you of possible impact that the Department of Treasury Office of Foreign Assets Control (OFAC) may have on your policy. Under Executive Order 13224, OFAC has been authorized to block assets of individuals and entities that provide support, services or assistance to, or otherwise associate with terrorists and terrorist organizations identified under the Order.  These individuals and entities will be designated as "Specially Designated Nationals" and listed on the United States Treasury's web site-
http://www.treasury.gov//ofac.

In accordance with OFAC regulations, insurance companies are prohibited from engaging in business transactions with those individuals and entities designated as "Specially Designated Nationals".  If it is determined that you or any other person or entity with benefits of this policy has violated U.S. sanctions law or is a "Specially Designated National", this policy will be considered a blocked or frozen contract and will be subject to OFAC oversight.  When your policy becomes a blocked or frozen contract, we will be unable to make payments or premium refunds without authorization from OFAC.

**IFG SM 0032 08 16**

**IFG-SM-0266 11 21**
**Page 1 of 3**

This endorsement changes the policy
**-- PLEASE READ THIS CAREFULLY --**

# EXCLUSION – CYBER INCIDENT

## DEFINITIONS

This endorsement applies to the Inland Marine Coverage Part and all other coverages, coverage extensions, supplemental coverages, optional coverages, and other endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

For the purposes of this endorsement, the following definitions are added, or replace and supersede any contradictory definitions, in the policy to which this endorsement is attached.

1. "Electronic data" means information, facts, files, or computer programs stored as or on, created or used on, or transmitted to or from computer software, including, but not limited to, systems and applications software, on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices, or any other repositories of computer software files; documents; information; and "media" in an electronic format that are stored as, on, created or used on, or transmitted to or from "computer programs or applications", "computer systems" or "proprietary computer programs".

2. "Media" means processing; recording; or storage "media" used with hardware. This includes, but is not limited to, films; tapes; cards; discs; drums; cartridges; cells; data processing devices, or any other source of computer software used with electronically operated equipment, including systems and applications software.

3. "Computer programs or applications" means operating programs and applications that "you" purchase and that are stored on "media" or pre-installed and stored in hardware which guide the processes and actions of a computer or processor connected to it and enable the computer or processor to receive; process; store; retrieve, or send data.

4. "Proprietary computer programs" means proprietary applications or programs that are developed in-house, or that "you" had developed specifically for "you", that are stored on "media" or pre-installed and stored in hardware which guide the processes and actions of a computer or processor connected to it, which enable the computer or processor to receive; process; store; retrieve, or send data.

5. "Computer systems" means
   a. Computer software, firmware, hardware and associated input and output devices (including, but not limited to, wireless, mobile, peripheral and component devices), data storage and data processing devices, networking equipment, and backup facilities, including cloud computing devices and facilities; and

   b. Any computer network, network interface, or network of devices or hardware, including, but not limited to, communication networks or devices, computer-controlled devices, operating and control systems, websites or domains, intranets, extranets, the internet or any other internal or external networks (including, but not limited to, cloud computing).

## PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

**IFG-SM-0266 11 21**   *Contains copyrighted material with the permission of American Association of Insurance Services, Inc.*

**IFG-SM-0266 11 21**
**Page 2 of 3**

The following exclusion is added under Perils Excluded:

**Cyber Incident –**

"We" do not pay for any loss, cost, expense, or damage, because of, caused by, arising or resulting, or relating to, directly or indirectly, in whole or in part from a cyber incident. Such loss, damage, cost, or expense are excluded regardless of any other cause or event that contributes in any sequence to, or aggravates the loss or damage, whether such cause or event acts to produce the loss before, at the same time as, or after a cyber incident.

As used in this exclusion Cyber Incident means:

1.  **a.** Unauthorized access to, acquisition, processing, storage, use, dissemination, publication, disclosure, or diversion of; or

    **b.** Exceeding authorized use, misuse, alteration, misappropriation, theft, loss, loss of use, disruption, corruption or impairment of, damage to, inability to access, failure to provide access to, failure to remove or rectify, failure to destroy, failure to protect or secure (including, but not limited to, failure to encrypt), or inability to manipulate;

    any person's or organization's confidential information or personal information including, but not limited to, patents, trade secrets, processing methods, customer or customer related information (including, but not limited to, customer lists), business plans or records, financial information, personally identifiable information, payment card information (including, but not limited to, credit, debit, or stored value cards), medical or health information, or any other type or combination of types of personal data or nonpublic information, whether such data or information is "electronic data" or in any other form or "media", "computer systems", or any "computer program and applications"; or

2.  Malicious code, virus, or any other harmful or unauthorized code that is directed at, enacted upon, or introduced into any "computer system" and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use, prevent or restrict access to, or the use of, any part of any "computer system" (including "electronic data") or otherwise disrupt its normal functioning, use, or operation; or

3.  Denial of service attack, denial of access to, denial or interruption of service, degradation, loss, loss of use, misappropriation, transmission, unauthorized use or access, misuse, delay, alteration, diversion, failure, destruction, disruption, corruption or impairment of, damage to, or inability to access, operate, host, use, manage, control or interface with, any "computer system" or "computer program or applications", including, but not limited to, any insured's, other person's, or other organization's "computer system" or "computer program and applications"; or

4.  Collection, sale, dissemination, publication, or disclosure of any person's or organization's confidential information, personal information or personal data, including, but not limited to, patents, trade secrets, processing methods, customer or customer related information (including, but not limited to, customer lists), business plans or records, financial information, personally identifiable information, payment card information (including, but not limited to, credit, debit, or stored value cards), medical or health information, or any other type or combination of types of personal data or nonpublic information, whether such data or information is "electronic data" or in any other form or "media", or any "computer system"; or

5.  Transfer, payment, or delivery of money or any form of currency, including, but not limited to, virtual currency, in response to a fraudulent instruction or demand; or

6.  Demand for ransom payments or other extortion made in connection with the actual or threatened perpetration of any of the events described in **1. – 5.**

This exclusion applies even if loss, cost, expense, or damage is claimed for any remediation measures (including, but not limited to, notification costs or credit monitoring), payment card restoration costs, business interruption, investigation, mitigation or restoration expenses, fines or penalties, public relations expenses, or any other damage, injury, cost, or expense because of, caused by, arising or resulting from, directly or indirectly, in whole or in part from a cyber incident.

**IFG-SM-0266 11 21**       *Contains copyrighted material with the permission of American Association of Insurance Services, Inc.*

This exclusion applies to any liability, loss, cost, expense, damage, or injury because of, caused by, arising or resulting, directly or indirectly, in whole or in part from any failure (including, but not limited to, failure to timely or properly act) to notify of, disclose, prepare for, respond to, protect against, remediate, mitigate, or comply with any statutory, regulatory, contractual, common law, or other legal obligation relating to a cyber incident.

This exclusion applies to all coverages under all forms and endorsements that comprise this Inland Marine Coverage Part or Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CANNABIS ITEMS AND CANNABIS ACTIVITIES EXCLUSION

1.  The following definitions are added:

    a.  "Cannabis" means:

    a genus of plants, including the leaves, buds, seeds, flowers, stems, stalks, and roots thereof, and any compounds, chemicals, resins, extracts, or any other derivative, product, byproduct, mixture, or combination that consists of or contains cannabinoids, in any shape or form, including, but not limited to, pills, gels, powders, liquids, edibles, solids, or vapors.

    b.  "Health hazards" means:

    any disease or condition, including, but not limited to, cancer, arteriosclerosis, heart disease, lung disease, emphysema, or other metabolic effects caused by or arising out of the use of "cannabis" or "synthetic substitutes".

    c.  "Synthetic substitutes" means:

    any chemicals, compounds, herbs, incense, salts, potpourri, drugs, or other substances that have or allegedly have the same or similar effects on humans as those derived from the cannabis plant, including, but not limited to, any chemicals listed on Schedule I of the Controlled Substances Act; regardless of what shape or form the "synthetic substitute" is contained, including, but not limited to, pills, gels, powders, liquids, edibles, solids, or vapors.

    d.  "Cannabis activities" means the:

    1)  compounding;
    2)  containing;
    3)  converting;
    4)  cooking;
    5)  delivering, distributing, transporting, or furnishing;
    6)  growing; including, but not limited to, cultivating, harvesting, planting, or propagating;
    7)  design, manufacturing;
    8)  handling, labeling, packaging or repackaging;
    9)  preparing;
    10) possession, processing, disposal;
    11) producing;
    12) selling, marketing, servicing, use;
    13) storing, warehousing; or
    14) testing or analyzing;

    of "cannabis" in any form or quantity.

    e.  "Cannabis items" means:

    1)  "cannabis"; and
    2)  any equipment, products, or materials used or primarily intended or designed for use in:

        a)  "cannabis activities"; or
        b)  ingesting, inhaling, smoking, vaporizing, or otherwise consuming "cannabis" in any form or quantity.

2.  If this policy provides property coverage, the following exclusion is added with respect to such coverage:

    **Cannabis Items And Cannabis Activities – Property Exclusion**

    a.  "We" do not pay for loss of or damage to:

    1)  "cannabis items"; or
    2)  any other property when the loss or damage arises out of any "cannabis activities" conducted by:

        a)  any person or entity insured under this policy;
        b)  anyone acting at the direction or on behalf of any person or entity insured under this policy; or
        c)  any tenants, roomers, boarders, or guests of a property insured under this policy.

    This includes, but is not limited to, any loss or damage caused by or resulting from smoke, vapor, gas, condensation, humidity, moisture, or any other substance discharged, dispersed,

Includes copyrighted material with the permission of American Association of Insurance Services, Inc.

**IFG-SM-2053 04 19**
**Page 2 of 2**

disposed of, emitted, escaped, leached, leaked, migrated, produced, released, seeped, or spilled during or as a result of such "cannabis activities".

b. Except as provided in item 2.c. below, loss arising out of "cannabis activities" will not be considered loss caused by any other peril, including, but not limited to, vandalism or malicious mischief, even if this policy provides coverage for loss caused by such peril.

c. To the extent that this policy provides coverage for loss caused by fire or explosion, this exclusion does not apply to direct loss to covered property caused by a fire or explosion resulting from "cannabis activities" or "cannabis items".

3. If this policy provides liability coverage, the following exclusion is added with respect to such coverage:

**Cannabis Items And Cannabis Activities – Liability Exclusion**

"We" do not provide liability coverage for any person or entity insured under this policy for liability arising out of:

a. the possession of "cannabis items"; or

b. any "cannabis activities". This includes, but is not limited to, any liability for loss or damage caused by or resulting from the burning, smoke, vapor, aerosol, gas, condensation, humidity, moisture, or any other substance discharged, dispersed, disposed of, emitted, escaped, leached, leaked, migrated, produced, released, seeped, or spilled during or as a result of such "cannabis activities".

c. The "health hazards" of "cannabis" or "synthetic substitutes"; or

d. The "health hazards" of second or third-hand smoke, vapor, or aerosol from the release, escape, burning, or vaping of "cannabis" or "synthetic substitutes".

4. The "terms" of this endorsement apply even if "cannabis activities" or the possession of "cannabis items" are legal or otherwise permissible in any capacity under the laws of the state, territory, or district in which this policy was issued or the loss occurs.

5. To the extent that the "terms" of this endorsement conflict with any other "terms" of this policy, this endorsement will control with respect to coverage for "cannabis items" and "cannabis activities".

6. This endorsement:

a. clarifies the intent of coverage under this policy; and

b. will not be construed to diminish, modify, narrow, or negate any exclusion in this policy that applies to:
   i.    contraband;
   ii.   controlled substances;
   iii.  criminal or illegal acts; or
   iv.   illegal transportation or trade.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Includes copyrighted material with the permission of American Association of Insurance Services, Inc.

**AAIS**
**IM 2009 01 19**
**Page 1 of 2**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## CALIFORNIA

1.  Under Perils Excluded, the first paragraph of item 1. is deleted and replaced by the following:

    "We" do not pay for loss or damage caused by one of the following excluded causes, events, or conditions.

2.  Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts is amended to include the following:

    However, with respect to a covered loss caused by fire, this exclusion does not apply to an insured who did not cooperate with or contribute to the act that caused such loss.

    Subject to all other "terms" of this policy, "our" payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to that person's insurable interest in the property, less any payment made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

3.  In all coverage forms except the Builders' Risk - Rehabilitation And Renovation Form, under Valuation, Actual Cash Value, if applicable, is amended to include the following:

    a.  The actual cash value of covered property will be determined as:

        1)  the amount it would cost to repair, rebuild, or replace the lost, damaged, or destroyed property less a fair and reasonable deduction for physical depreciation; or
        2)  the "limit" applicable to that property at the time of the loss;

        whichever is less.

    b.  The condition of the property at the time of the loss is the basis for determining the amount of physical depreciation. The expense of labor necessary to repair, rebuild, or replace covered property is not a component of physical depreciation.

    c.  a. and b. above do not apply to property subject to Agreed Amount valuation "terms" or an item of property specifically scheduled with a value applicable to such item.

4.  In the Builders' Risk - Rehabilitation And Renovation Form, under Valuation, Existing Building, Actual Cash Value, if applicable, is amended to include the following:

    a.  The actual cash value of covered property will be determined as:

        1)  the amount it would cost to repair, rebuild, or replace the lost, damaged, or destroyed property less a fair and reasonable deduction for physical depreciation; or
        2)  the "limit" applicable to that property at the time of the loss;

        whichever is less.

    b.  The condition of the property at the time of the loss is the basis for determining the amount of physical depreciation. The expense of labor necessary to repair, rebuild, or replace covered property is not a component of physical depreciation.

    c.  a. and b. above do not apply to property subject to Stated Value valuation "terms" or an item of property specifically scheduled with a value applicable to such item.

**AAIS**
**IM 2009 01 19**
**Page 2 of 2**

5. In the Builders' Risk - Rehabilitation And Renovation Form, under Valuation, Building Materials is deleted and replaced by the following:

**Building Materials --**

a. **Actual Cash Value --** The value of "building materials" will be based on the actual cash value at the time of loss (less a fair and reasonable deduction for physical depreciation).

b. **Actual Cash Value Means --** The actual cash value of "building materials" means:

  1) the actual cash value of "building materials" means:

    a) the necessary and reasonable cost of materials (less a fair and reasonable deduction for physical depreciation) and labor incurred to repair or replace the part of the covered "building materials" that sustains direct physical loss or damage;
    b) the reasonable overhead and profit related to the covered "building materials" that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the "rehabilitation or renovation project" in accordance with the construction contracts; and

  2) other related construction costs and expenses that are re-incurred to repair or replace the part of "building materials" that sustain direct physical loss or damage, but only if such costs have been included as part of the "limit" for a covered "rehabilitation or renovation project".

6. Under How Much We Pay, Insurance Under More Than One Policy is deleted and replaced by the following:

**Insurance Under More Than One Policy --**

"You" may have another policy covering identical risks, whether or not both policies are subject to the same "terms", such insurers are liable to make loss payment as described below. In the event "you" have double insurance, and incur:

a. a total or constructive total loss, "we" will pay "our" share of the covered loss if that policy has the same effective date as this policy. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

  However, if there is a total or constructive loss and that policy has an effective date other than the effective date on this policy, "we" will pay according to the effective dates on the policies. This policy will be primary to any policy with an effective date after the effective date of this policy. This policy will be excess over any policy with an effective date before the effective date of this policy.

b. a partial loss, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

**IM 2009 01 19**

      Copyright, American Association of Insurance Services, Inc., 2019      **AAIS**

**AAIS**
**IM 7853 07 08**
**Page 1 of 1**

This endorsement changes
the Inland Marine Coverage
**-- PLEASE READ THIS CAREFULLY --**

# PROTECTIVE DEVICES ENDORSEMENT

If indicated on the Protective Devices Schedule, the following conditions apply to the locations described on the schedule.

## OTHER CONDITIONS

**Protective Devices** -- "You" are required to maintain, at all times during the policy period, the protective devices and services described on the Protective Devices Schedule.

## PERILS EXCLUDED

1.  The following exclusion is added to item 2. under Perils Excluded and applies only when a device or service, shown on the Protective Devices Schedule, provides fire protection:

    "We" do not pay for loss caused by fire if, prior to the fire, "you":

    a.  had knowledge of any suspension or impairment in the protective device or service described on the Protective Devices Schedule and did not notify "us"; or

    b.  failed to maintain in complete working order, the fire protective device or service described on the Protective Devices Schedule which "you" control.

    However, if part of an automatic sprinkler system is shut off because of leakage, breakage, freezing conditions, or opening of sprinkler heads and "you" can restore full protection within 48 hours, notification to "us" is not required.

2.  The following exclusion is added to item 2. under Perils Excluded and applies only when a device or service, shown on the Protective Devices Schedule, provides theft protection:

    "We" do not pay for loss caused by theft if, prior to the theft, "you":

    a.  had knowledge of any suspension or impairment in the protective device or service described on the Protective Devices Schedule and did not notify "us"; or

    b.  failed to maintain in complete working order, the theft protective device or service described on the Protective Devices Schedule which "you" control.

**IM 7853 07 08**

Copyright, American Association of Insurance Services, Inc., 2008

**AAIS**
**IM 7904 01 12**

**POLICY NUMBER**
HSI0005545

# PROTECTIVE DEVICES SCHEDULE

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

| Loc. No. | Address | Protective Device or Service |
|----------|---------|------------------------------|
| 1 | 12413, 12421-12423 & 12427 Dahlia Ave El Monte, CA | Fencing, Building power supply disconnected. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**IM 7904 01 12**

Copyright, American Association of Insurance Services, Inc., 2012

# POLICYHOLDER NOTICE

# IMPORTANT CLAIM REPORTING INFORMATION

It is important, for your own protection that you immediately report all claims.

## PHONE Toll Free 24 hrs 1-800-328-8719

E-mail Claimnotice@IFGCompanies.com
Web http://www.ifgcompanies.com/Pages/claims.aspx

If you have suffered a loss or are involved in an incident that may lead to a claim, here are some tips to help you in the event a claim is made under the policy:

- Report the loss or incident to the Company or your insurance agent as soon as practicable
- Report all claims involving damage, injury, theft, vandalism, or other crimes to the police when they occur.
- Secure a copy of the police report when available.
- Record the names, addresses, email address and phone numbers of every person involved, particularly the party who was injured or damaged and any witnesses to the incident.
- Do not discuss the incident with any other party other than investigative authority personnel or your insurance agent.
- If a camera or camera phone is available, please take pictures of the conditions that led to the injury or damage and to document the nature and extent of the damage sustained.
- Determine if there is any video surveillance equipment in the area where the incident took place that may have captured what happened. If the video surveillance equipment is owned or controlled by you, please preserve the recording and if necessary make a copy. If owned by others, request in writing (if possible), that the owner or possessor of the recording make a copy of it and ensure that it is not copied over, altered or destroyed.
- If you have any other evidence related to the incident please preserve and save it and do not allow it to be altered in any way.
- For damage to your property or to property of others in your care, custody or control for which a claim may be made, take the necessary steps to preserve the damaged property and mitigate any further damage. Make temporary repairs as needed to protect the property from further damage and keep all receipts for the cost of such repairs or mitigation efforts.

SIM-0999 04 18

**AAIS**
**IM 7055 07 20**
**Page 1 of 3**

**POLICY NUMBER**
HSI0005545

# SCHEDULE OF COVERAGES
## BUILDERS' RISK
## COMPREHENSIVE FORM

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

## SCHEDULED JOBSITES

| Loc. No. | "Jobsite" | "Limit" |
|---|---|---|
| 1 | 12413,12421-12423 &12427, Dahlia Avenue El Monte, CA 91732 | $ 5,000,000 |
| | On the renovations made to the five one story buildings, while in the course of construction and located above | |
| | | $ |

Check if applicable:

[ ] Attach Additional Builders' Risk Schedule to schedule more "jobsites"

## CATASTROPHE LIMIT                                                                "Limits"

[ ] Separate Catastrophe Limits

Builders' Risk Catastrophe Limit applies only to coverage
provided under the Builders' Risk Coverage Form                      $

Delay In Completion Catastrophe Limit applies only to
coverage provided under the Delay In Completion
Coverage Part                                                                              $

[X] Combined Catastrophe Limit

Combined Catastrophe Limit applies to coverage provided
under the Builders' Risk Coverage Form and the
Delay In Completion Coverage Part                                          $ 5,000,000

**IM 7055 07 20**          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

**AAIS**
**IM 7055 07 20**
**Page 2 of 3**

| COVERAGE EXTENSIONS | "Limits" |
|---|---|
| Additional Debris Removal Expenses | $ 25%/$5,000 |
| Emergency Removal | 10 days |
| Emergency Removal Expenses | $ 10,000 |
| Fraud And Deceit | $ 50,000 |
| Limited Fungus Coverage | $ 15,000 |
| Waterborne Property | $ 15,000 |

| SUPPLEMENTAL COVERAGES | "Limits" |
|---|---|
| Expediting Expenses | $ 10,000 |
| Expense To Re-Erect Scaffolding | $ 5,000 |
| Fire Department Service Charges | $ 1,000 |
| Ordinance Or Law (Undamaged Parts Of A Building) | Covered |
| Ordinance Or Law (Increased Cost To Repair And Cost To Demolish/Clear Site) | $ 250,000 |
| Personal Property | $ 70,000 |
| Pollutant Cleanup And Removal | $ 25,000 |
| Rewards | $ 1,000 |
| Sewer Backup | $ 10,000 |
| Temporary Storage Locations | $ 250,000 |
| Transit | $ 250,000 |
| Trees, Shrubs, And Plants | $ 10,000 |

IM 7055 07 20        Copyright, American Association of Insurance Services, Inc., 2020        **AAIS**

**AAIS**
**IM 7055 07 20**
**Page 3 of 3**

### DEDUCTIBLE

Deductible Amount                                                 $ 10,000

### COINSURANCE (check one)

[X] 100%

[ ] Coinsurance Provisions Are Waived

### PERMISSION TO OCCUPY (check one)

[X] Permission to occupy is not granted.

[ ] The occupancy and use provisions under Additional Coverage Limitations are
deleted, and permission is granted to occupy covered property after the date
indicated below:

   Month_____     Day_____     Year_____

### ADDITIONAL INFORMATION

**AAIS**
**IM 7050 07 20**
**Page 1 of 23**

# BUILDERS' RISK COVERAGE
## SCHEDULED JOBSITE FORM
## COMPREHENSIVE FORM

In this coverage form, the words "you" and "your" mean any persons or organizations named as the insured on the declarations and the words "we", "us", and "our" mean the company providing this coverage.

Refer to the Definitions section at the end of this coverage form for additional words and phrases that have special meaning. These words and phrases are shown in quotation marks.

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Builders' Risk Coverage. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

## PROPERTY COVERED

**Course Of Construction --**

1. **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to "buildings or structures" while in the course of construction, erection, or fabrication.

2. **Scaffolding, Construction Forms, Fencing, And Temporary Structures --** "We" also cover direct physical loss or damage caused by a covered peril to:

   a. scaffolding, construction forms, or temporary fencing; and

   b. temporary structures.

3. **Coverage Limitation** -- "We" only cover:

   a. "buildings or structures" in the course of construction; and

   b. scaffolding, construction forms, temporary fencing, and temporary structures

   at the "jobsite" described on the "schedule of coverages".

4. **We Do Not Pay --**

   a. **Penalties** -- "We" do not pay for any penalties for:

      1) noncompletion or late completion of "buildings or structures" as imposed by the provisions or conditions in the construction contract; or
      2) noncompliance with any provisions or conditions in the construction contract.

   b. **Diminution In Value** -- "We" do not pay for any loss of value or any diminution in value of "buildings or structures", however measured, that remains following the repair or replacement of a covered loss.

---

IM 7050 07 20                Copyright, American Association of Insurance Services, Inc., 2020                **AAIS**

AAIS
IM 7050 07 20
Page 2 of 23

## PROPERTY NOT COVERED

1. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

2. **Land** -- "We" do not cover land including land on which covered property is located.

3. **Not A Permanent Part Of Building** -- Except as provided under Supplemental Coverages - Personal Property, "we" do not cover:

   a. materials and supplies;

   b. machinery, tools, and equipment; and

   c. business personal property

   that will not become a permanent part of covered "buildings or structures".

4. **Roadways And Walkways** -- "We" do not cover any portion of walkways, roadways, and other paved surfaces that is more than 1,000 feet from covered "buildings or structures".

5. **Standing Buildings Or Structures** --

   a. "We" do not cover any:

      1) standing "buildings or structures"; or
      2) parts of standing "buildings or structures"

      that have been wholly or partially constructed, erected, or fabricated prior to the inception of this policy.

   b. "We" do not cover any standing "buildings or structures" in the process of rehabilitation or renovation. Rehabilitation and renovation includes, but is not limited to, any additions, alterations, improvements, or repairs to existing "buildings or structures".

6. **Trees, Shrubs, Or Plants** -- Except as provided under Supplemental Coverages - Trees, Shrubs, And Plants, "we" do not cover trees, shrubs, plants, or lawns.

7. **Waterborne Property** -- Except as provided under Coverage Extensions - Waterborne Property, "we" do not cover property while waterborne unless in transit in the custody of a carrier for hire.

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Coverage Extension within this coverage form, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined with or added to the "limit" for any other Coverage Extension or Supplemental Coverage, including a Coverage Extension, Supplemental Coverage, or other coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following Coverage Extensions are not subject to and not considered in applying coinsurance conditions.

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

**AAIS
IM 7050 07 20
Page 3 of 23**

Unless otherwise noted, the deductible does not apply to the following described Coverage Extensions.

1. **Debris Removal** --

   a. **Coverage** -- "We" pay the costs for the demolition, clearing, and removal of debris of covered property if such debris results from a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or
      2) remove, restore, or replace polluted land or water.

   c. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss or damage to covered property exclusive of the costs for debris removal. "We" will not pay more for loss to covered property and debris removal combined than the "limit" for such property.

   d. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss to covered property or when the loss to covered property and debris removal combined exceeds the "limit" for such property.

   e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal** --

   a. **Coverage** -- "We" cover any direct physical loss or damage to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

   b. **Time Limitation** -- This coverage applies for up to ten days after the property is first moved.

      However, this coverage does not extend past the date on which this policy expires.

3. **Emergency Removal Expenses** --

   a. **Coverage** -- "We" pay for "your" expenses to move or store covered property to prevent a loss caused by a covered peril.

   b. **Time Limitation** -- This coverage applies for up to ten days after the property is first moved.

      However, this coverage does not extend past the date on which this policy expires.

   c. **Limit** -- The most "we" pay in any one occurrence under this Coverage Extension is $10,000.

   d. **This Is A Separate Limit** -- The "limit" for Emergency Removal Expenses is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

4. **Fraud And Deceit** --

   a. **Coverage** -- "We" cover theft of covered property when "you" or "your" agents, customers, or consignees are fraudulently induced to part with the covered property:

      1) to persons who falsely represent themselves as the proper persons to receive such property;
      2) by the acceptance of fraudulent bills of lading or shipping receipts; or
      3) as a result of or directly related to the use of any electronic data processing hardware or software.

   b. **Limit** -- The most "we" pay in any one occurrence under this Coverage Extension is $50,000.

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

AAIS
IM 7050 07 20
Page 4 of 23

5. **Limited Fungus Coverage** --

   a. **Coverage** -- "We" pay for:

      1) costs and expenses arising out of the presence of "fungus" on covered property caused by or resulting from a covered peril; and

      2) direct physical loss or damage to covered property caused by or relating to the existence of or any activity of "fungus".

   b. **Coverage Limitation** -- "We" only provide the coverage described in item 5.a. above:

      1) when the "fungus" is the result of:

         a) a "specified peril" other than fire or lightning; or

         b) "flood" (if Flood Coverage is provided under this policy);

         that occurs during the policy period; and

      2) if all reasonable steps were taken to protect the property from additional damage at and after the time of the occurrence.

   c. **Limited Fungus Coverage Limit** -- The most "we" pay for all loss or damage covered by this Coverage Extension at all "buildings or structures" is $15,000, unless another "limit" is indicated on the "schedule of coverages". The Limited Fungus Coverage Limit applies regardless of the number of claims made.

      The Limited Fungus Coverage Limit applies regardless of the number of locations or "buildings or structures" insured under this policy.

   The Limited Fungus Coverage Limit is the most that "we" pay for the total of all loss or damage arising out of all occurrences of "specified perils", other than fire or lightning, or "flood" (if applicable) during each separate 12-month period beginning with the inception date of this policy.

   d. **If The Policy Period Is Extended** -- If the policy period is extended for an additional period of less than 12 months, this additional period will be considered part of the preceding period for the purpose of determining the Limited Fungus Coverage Limit.

   e. **Recurrence And Continuation Of Fungus** -- The Limited Fungus Coverage Limit is the most that "we" pay with respect to a specific occurrence of a loss that results in "fungus" even if such "fungus" recurs or continues to exist during this or any future policy period.

   f. **Limited Fungus Coverage Limit Applies To Other Costs Or Expenses** -- The Limited Fungus Coverage Limit also applies to any cost or expense to:

      1) clean up, contain, treat, detoxify, or neutralize "fungus" on covered property or remove "fungus" from covered property;

      2) remove and replace those parts of covered property necessary to gain access to "fungus"; and

      3) test for the existence or level of "fungus" following the repair, replacement, restoration, or removal of damaged property if it is reasonable to believe that "fungus" is present.

   g. **Loss Not Caused By Fungus** -- If there is a covered loss or damage to covered property not caused by "fungus", loss payment will not be limited by the "terms" of this Coverage Extension. However, to the extent that "fungus" causes an increase in the loss, that increase is subject to the "terms" of this Coverage Extension.

Copyright, American Association of Insurance Services, Inc., 2020
**AAIS**

**AAIS**
**IM 7050 07 20**
**Page 5 of 23**

6.  **Waterborne Property** --

    a.  **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to covered property while waterborne.

        Waterborne under this coverage means performing work on water or over the side of a vessel. Waterborne includes transportation on water that is incidental to the land portion of the journey.

    b.  **Limitation** -- "We" do not cover waterborne property while on the following bodies of water:

        1)  Mississippi River;
        2)  coastal waters of the United States of America;
        3)  waters between and around the Hawaiian Islands; and
        4)  waters between and around the Aleutian Islands.

    c.  **Limit** -- The most "we" pay in any one occurrence under this Coverage Extension is $10,000.

---

# SUPPLEMENTAL COVERAGES

---

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage within this coverage form, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a.  is the only "limit" available for the described coverage; and

b.  is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined with or added to the "limit" for any other Supplemental Coverage or Coverage Extension, including a Supplemental Coverage, Coverage Extension, or other coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following Supplemental Coverages are not subject to and not considered in applying coinsurance conditions.

Unless otherwise noted, the deductible does not apply to the following described Supplemental Coverages.

1.  **Expediting Expenses** --

    a.  **Coverage** -- When a covered peril occurs to covered "buildings or structures" and that covered peril causes a delay in completion of construction, "we" pay for reasonable expediting expenses necessary to address the delay in completion of construction caused by the covered peril so as to complete construction within the time frame specified in the construction contract.

---

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

AAIS
IM 7050 07 20
Page 6 of 23

b. **Coverage Limitation** -- "We" only pay expediting expenses if prior to the delay caused by the covered peril the "buildings or structures" are otherwise on track to be completed by the completion date set forth in the construction contract including amendments or change orders incorporated into the construction contract.

c. **Expediting Expenses Include** -- Expediting expenses include, but are not limited to, additional:

 1) labor or overtime;
 2) transportation costs and storage expense;
 3) expense to rent additional equipment; and
 4) similar construction expenses.

d. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $10,000.

2. **Expense To Re-Erect Scaffolding** --

a. **Coverage** -- "We" pay "your" expense to re-erect scaffolding after a covered loss to covered "buildings or structures".

b. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $5,000.

3. **Fire Department Service Charges** --

a. **Coverage** -- "We" cover "your" liability for fire department or volunteer fire department service charges.

b. **Coverage Limitations** -- "We" only pay for:

 1) fire department or volunteer fire department service charges that relate to covered property; and
 2) charges incurred when the fire department or volunteer fire department is called to save or protect covered property from a covered peril.

c. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $1,000.

4. **Ordinance Or Law (Undamaged Parts Of A Building)** --

a. **Coverage** -- When a covered peril occurs to covered "buildings or structures", "we" pay for the value of undamaged parts of covered "buildings or structures" that is required to be demolished as a result of the enforcement of any ordinance, law, or decree that:

 1) requires the demolition of undamaged parts of covered "buildings or structures" that are damaged or destroyed by a covered peril;
 2) regulates the construction or repair of "buildings or structures", or establishes building, zoning, or land use requirements at a covered "jobsite"; and
 3) is in force at the time of loss.

b. **We Do Not Cover** -- "We" do not cover:

 1) costs associated with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants";
 2) loss or increased cost caused by the enforcement of any ordinance, law, or decree that requires the reconstruction, repair, replacement, remodeling, remediation, or razing of property due to the existence of or any activity of "fungus"; or
 3) costs associated with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus".

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

c. **Coverage Limitation** -- This coverage is part of and not in addition to the applicable "limit" for coverage described under Property Covered.

5. **Ordinance Or Law (Increased Cost To Repair And Cost To Demolish/Clear Site) --**

   a. **Increased Cost To Repair --**

      1) **Coverage** -- When a covered peril occurs to covered "buildings or structures", "we" cover the increased cost to repair, rebuild, or reconstruct:

         a) damaged portions of covered "buildings or structures"; and
         b) undamaged portions of covered "buildings or structures" whether or not those undamaged portions need to be demolished;

         as a result of the enforcement of building, zoning, or land use ordinance, law, or decree and is in force at the time when a covered peril occurs to covered "buildings or structures".

      2) **If The Building Is Repaired Or Rebuilt** -- If covered "buildings or structures" are repaired or rebuilt, they must be intended for similar occupancy or use as the current property, unless otherwise required by building, zoning, or land use ordinance, law, or decree.

      3) **Coverage Limitation** -- "We" do not cover the increased cost of construction until the covered "buildings or structures" are actually repaired or replaced, whether at the same or another location, and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years. The period for repair or replacement may be extended by "us" in writing during the two year period.

b. **Cost To Demolish And Clear Site** -- "We" cover the cost to demolish and clear the site of undamaged parts of the covered "buildings or structures" that are damaged or destroyed by a covered peril. The demolition must be a result of the enforcement of a building, zoning, or land use ordinance, law, or decree that is in force at the time when a covered peril occurs to covered "buildings or structures".

c. **We Do Not Cover** -- "We" do not cover:

   1) the costs associated with the enforcement of any ordinance, law, or decree:

      a) that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants";
      b) that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus"; or
      c) "you" were required to comply with before the covered peril occurred to covered "buildings or structures", even if the "buildings or structures" were undamaged and "you" failed to comply with the ordinance, law, or decree; or

   2) loss or increased cost caused by the enforcement of any ordinance, law, or decree that requires the reconstruction, repair, replacement, remodeling, remediation, or razing of property due to the existence of or any activity of "fungus".

 Copyright, American Association of Insurance Services, Inc., 2020

d.  **What We Pay** --

1)  **If The Building Is Repaired Or Replaced At Same Site Or Opt To Build At Another Location** -- If the covered "buildings or structures" are repaired or replaced at the same location or "you" opt to build at another location, "we" pay the lesser of:

    a)  the amount "you" actually spend to demolish and clear the site of undamaged parts of the covered "buildings or structures", plus the actual increased cost to repair, rebuild, or construct the property but not for more than "buildings or structures" of the same height, floor area, and style at the same location with materials of like kind and quality; or
    b)  $50,000.

2)  **If The Building Is Repaired Or Replaced And Required By Ordinance Or Law To Relocate** -- If the covered "buildings or structures" are rebuilt at a new location due to an ordinance or law requirement, "we" pay the lesser of:

    a)  the amount "you" actually spend to demolish and clear the site of undamaged parts of the covered "buildings or structures", plus the actual increased cost to construct "buildings or structures" of the same height, floor area, and style at a new location with materials of like kind and quality; or
    b)  $50,000.

3)  **If The Building Is Not Repaired Or Replaced** -- If the covered "buildings or structures" are not repaired or replaced, "we" pay the lesser of:

    a)  the amount "you" actually spend to demolish and clear the site of undamaged parts of the covered "buildings or structures"; or
    b)  $50,000.

6.  **Personal Property** --

    a.  **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to business personal property that will not become a permanent part of covered "buildings or structures".

    b.  **Coverage Limitation** -- "We" only cover business personal property while being installed, assembled, or stored in covered "buildings or structures".

    c.  **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $10,000.

7.  **Pollutant Cleanup And Removal** --

    a.  **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

    b.  **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

    c.  **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

        However, "we" pay the cost of testing that is necessary for the extraction of "pollutants" from land or water.

   Copyright, American Association of Insurance Services, Inc., 2020   **AAIS**

d.  **Limit** -- The most "we" pay for each location is $25,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

8.  **Rewards** --

a.  **Coverage** --

1)  "We" pay a reward to an eligible person for information leading to the arrest and conviction of any person or persons committing:

a)  arson;
b)  theft; or
c)  vandalism.

The conviction must involve a covered loss, under this policy, caused by arson, theft, or vandalism.

2)  "We" pay a reward to an eligible person for the return of stolen covered property when the loss is caused by theft.

b.  **Eligible Person Means** -- An eligible person under this Supplemental Coverage means the first person to voluntarily provide the applicable law enforcement agency with the necessary information or return the stolen covered property.

An eligible person cannot be:

1)  "you" or any family member;
2)  "your" employee or any of his or her family members;
3)  an employee of the applicable law enforcement agency;
4)  any person who had custody of the covered property at the time the property was stolen; or
5)  any person involved in the crime.

c.  **Coverage Limitation** -- There will be no reward payment unless and until the person(s) committing the crime is (are) convicted, or the covered property is returned.

d.  **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $1,000.

The amount "we" pay is not increased by the number of persons involved in providing the information.

9.  **Sewer Backup** --

a.  **Coverage** -- "We" cover direct physical loss or damage to covered property caused by or resulting from:

1)  water or waterborne material that backs up, overflows or is otherwise discharged through a sewer or drain, sump or septic tank; or
2)  water or waterborne material below the surface of the ground, including but not limited to water or waterborne material that exerts pressure on or flows, seeps, or leaks through or into covered "buildings or structures", sidewalk, driveway, foundation, swimming pool, or other structure.

b.  **Coverage Limitations** -- "We" do not cover loss or damage resulting from:

1)  escape of water or waterborne material from a sump pit not equipped with a sump pump;
2)  failure to perform routine maintenance and repair of all sump pumps and related equipment; and
3)  failure to perform routine maintenance of sewers and drains including keeping sewers and drains free from obstructions. This limitation does not apply if "you" are not responsible for the maintenance of sewers or drains that results in loss or damage.

c.  **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $10,000.

   Copyright, American Association of Insurance Services, Inc., 2020   **AAIS**

**AAIS**
**IM 7050 07 20**
**Page 10 of 23**

10. **Temporary Storage Locations** --

    a. **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to:

       1) materials and supplies that will become a permanent part of covered "buildings or structures";
       2) business personal property as described under Supplemental Coverages - Personal Property; and
       3) trees, shrubs, plants, and lawns as described under Supplemental Coverages - Trees, Shrubs, And Plants and only for the perils described under Trees, Shrubs, And Plants

       while temporarily in storage at a location that is not described on the "schedule of coverages".

    b. **We Do Not Cover** -- "We" do not cover property in storage if the property has not been specifically allocated to or otherwise identified with covered "buildings or structures".

    c. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $10,000.

11. **Transit** --

    a. **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to:

       1) materials and supplies that will become a permanent part of covered "buildings or structures";
       2) business personal property as described under Supplemental Coverages - Personal Property; and
       3) trees, shrubs, plants, and lawns as described under Supplemental Coverages - Trees, Shrubs, And Plants and only for the perils described under Trees, Shrubs, And Plants

       while in transit.

    b. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $10,000.

12. **Trees, Shrubs, And Plants** --

    a. **Coverage Away From Buildings** -- "We" cover direct physical loss or damage including debris removal expenses, to trees, shrubs, plants, and lawns that are planted or installed within 1,000 feet of covered "buildings or structures".

       However, "we" do not cover trees, shrubs, plants, and lawns that are inside or upon "buildings or structures".

    b. **Coverage In Or On Buildings** -- "We" cover direct physical loss or damage including debris removal expenses, to trees, shrubs, plants, and lawns that are planted or installed inside or upon covered "buildings or structures".

       "We" also cover direct physical loss or damage including debris removal expenses, to trees, shrubs, plants, and lawns that are part of a vegetated roof.

    c. **Coverage Limitation** -- "We" only cover trees, shrubs, plants, and lawns that are:

       1) at a covered "jobsite"; and
       2) being permanently planted or installed as part of "your" construction project.

    d. **We Do Not Cover** -- "We" do not cover trees, shrubs, or plants that are planted in flower pots, hanging baskets, flower boxes, or containers whether or not the pots, baskets, flower boxes, or containers are inside, upon, or outside of "buildings or structures".

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

e.  **Covered Perils** -- "We" only cover loss or damage to trees, shrubs, plants, and lawns caused by the following perils:

1)  fire;
2)  lightning;
3)  explosion;
4)  riot or civil commotion;
5)  falling objects; or
6)  vandalism.

f.  **Limits** --

1)  **Coverage Away From Buildings** -- The most "we" pay in any one occurrence for loss to trees, shrubs, plants and lawns that are planted or installed within 1,000 feet of covered "buildings or structures" is $10,000.
2)  **Coverage In Or On Buildings** -- The most "we" pay in any one occurrence for loss to trees, shrubs, plants and lawns that are planted or installed inside or upon covered "buildings or structures" is $10,000.

# PERILS COVERED

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

# PERILS EXCLUDED

1.  "We" do not pay for loss or damage caused directly or indirectly by, or consisting of, one or more of the following excluded causes, events, or conditions. Such loss or damage is excluded regardless of other causes, events, or conditions that contribute in any sequence to or aggravate the loss, whether such causes, events, or conditions act to produce the loss before, at the same time as, or after the excluded causes, events, or conditions.

a.  **Civil Authority** -- Order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b.  **Earth Movement** -- "Earth movement" whether natural or manmade and regardless of cause and regardless of whether or not the cause of the "earth movement":

1)  originated at the covered property; or
2)  was being performed at "your" request or for "your" benefit.

However, if eruption, explosion, or effusion of a volcano results in "volcanic action", "we" will pay for the loss or damage caused by that "volcanic action".

If "earth movement" results in fire, "we" will pay for the loss or damage caused by that fire. If "earth movement" (other than eruption, explosion, or effusion of a volcano) results in explosion, "we" will pay for the loss or damage caused by that explosion.

This exclusion does not apply to covered property while in transit.

c.  **Flood** -- "Flood".

"We" also do not cover waterborne material carried or otherwise moved by "flood", whether or not driven by wind, including storm surge, or material carried or otherwise moved by mudslide or mudflow.

However, if "flood" results in fire, explosion, or sprinkler leakage, "we" will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

This exclusion does not apply to covered property while in transit.

---

    Copyright, American Association of Insurance Services, Inc., 2020

d. **Fungus** -- Except as provided under Coverage Extensions - Limited Fungus Coverage, the existence of or any activity of "fungus".

But if "fungus" results in a "specified peril", "we" cover loss or damage caused by that "specified peril".

This exclusion does not apply to:

1) loss that results from fire or lightning; or
2) collapse caused by hidden decay.

e. **Nuclear Hazard** -- Nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

f. **Ordinance Or Law** -- Except as provided under Supplemental Coverages - Ordinance Or Law, enforcement of any code, ordinance, or law regulating the use, construction, or repair of any "buildings or structures"; or requiring the demolition of any "buildings or structures" including the cost of removing its debris.

"We" do not pay for loss or increased cost regardless if the loss or increased cost is caused by or results from the:

1) enforcement of any code, ordinance, or law even if "buildings or structures" have not been damaged; or
2) increased costs that "you" incur because of "your" compliance with a code, ordinance, or law during the construction, repair, rehabilitation, remodeling, or razing of "buildings or structures", including the removal of debris, following direct physical loss or damage to the property.

g. **Sewer, Septic Tank, Sump, Or Drain Backup And Water Below The Surface** -- Except as provided under Supplemental Coverages - Sewer Backup:

1) water or waterborne material that backs up, overflows or is otherwise discharged through a sewer or drain, sump or septic tank, eaves trough or downspout; or
2) water or waterborne material below the surface of the ground, whether naturally or artificially occurring, including but not limited to water or waterborne material that exerts pressure on or flows, seeps, or leaks through or into covered "buildings or structures", sidewalk, driveway, foundation, swimming pool, or other structure.

But if sewer, drain, sump, septic tank, eaves trough, or downspout backup and water or waterborne material below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

This exclusion does not apply to covered property while in transit.

h. **War And Military Action** --

1) War, including undeclared war or civil war; or
2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

    Copyright, American Association of Insurance Services, Inc., 2020

**AAIS**
**IM 7050 07 20**
**Page 13 of 23**

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War And Military Action exclusion will apply in place of the Nuclear Hazard exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

    a. **Contamination Or Deterioration** -- "We" do not pay for loss or damage caused by or resulting from contamination or deterioration including corrosion, decay, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself.

       But if contamination or deterioration results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

    b. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss or damage caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

       1) "you";
       2) others who have an interest in the property;
       3) others to whom "you" entrust the property;
       4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
       5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

       This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

       This exclusion does not apply to covered property in the custody of a carrier for hire.

c. **Defects, Errors, And Omissions** --

    1) "We" do not pay for loss or damage consisting of, caused by, or resulting from an act, defect, error, or omission (negligent or not) relating to:

       a) design, specifications, construction, materials, or workmanship;
       b) planning, zoning, development, siting, surveying, grading, or compaction; or
       c) maintenance, installation, renovation, remodeling, or repair.

       But if an act, defect, error, or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

    2) This exclusion applies regardless of whether or not the act, defect, error, or omission:

       a) originated at covered "buildings or structures"; or
       b) was being performed at "your" request or for "your" benefit.

d. **Delay In Completion And Increased Construction Costs** --

    1) Except as provided under Supplemental Coverages - Expediting Expenses, "we" do not pay for loss or damage caused directly or indirectly by a:

       a) delay in the completion of construction, erection, or fabrication of "buildings or structures" or any portion of "buildings or structures"; or

---

**IM 7050 07 20**    Copyright, American Association of Insurance Services, Inc., 2020    **AAIS**

b) a change in the sequence of construction, erection, or fabrication of "buildings or structures" or any portion of "buildings or structures"

regardless of the cause of the delay in completion or change in sequence.

2) "We" also do not pay for increased construction costs caused by or resulting from a delay in completion or change in sequence as described above under items d.1), a) and b). Increased construction costs include, but are not limited to:

a) general conditions;
b) increased construction costs and additional construction expenses;
c) increased overhead, increased material costs, and increased labor costs;
d) soft costs; and
e) loss of earnings and loss of rental income.

3) General conditions means general conditions and extended general conditions including, but not limited to, costs of additional:

a) utility charges;
b) maintenance;
c) facilities;
d) communications; or
e) administrative personnel.

e. **Electrical Currents** -- "We" do not pay for loss or damage caused by or resulting from arcing or by electrical currents other than lightning.

But if arcing or electrical currents other than lightning result in a "specified peril", "we" do cover the loss or damage caused by that "specified peril".

f. **Loss Of Use And Consequential Loss** -- "We" do not pay for loss or damage caused by or resulting from loss of use, delay, or loss of market. "We" also do not pay for any consequential loss or damage of any nature.

g. **Mechanical Breakdown** -- "We" do not pay for loss or damage caused by or resulting from:

1) mechanical breakdown; or
2) rupturing or bursting of moving parts of machinery caused by centrifugal force.

But if a mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force results in a "specified peril", "we" do cover the loss or damage caused by that "specified peril".

h. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

This exclusion does not apply to covered property in the custody of a carrier for hire.

i. **Pollutants** -- "We" do not pay for loss or damage caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants":

1) unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril"; or
2) except as specifically provided under the Supplemental Coverages - Pollutant Cleanup And Removal.

"We" do cover any resulting loss caused by a "specified peril".

 Copyright, American Association of Insurance Services, Inc., 2020

AAIS
IM 7050 07 20
Page 15 of 23

j.  **Steam Boiler Explosion** -- "We" do not
pay for loss or damage caused by or
resulting from an explosion of steam
boilers, steam pipes, steam turbines, or
steam engines.

But if an explosion of steam boilers,
steam pipes, steam turbines, or steam
engines results in a fire or combustion
explosion, "we" cover the loss or damage
caused by that fire or combustion
explosion. "We" also cover loss or
damage caused by or resulting from the
explosion of gas or fuel in a firebox,
combustion chamber, or flue.

k.  **Temperature/Humidity** -- "We" do not
pay for loss or damage caused by or
resulting from dryness, dampness,
humidity, or changes in or extremes of
temperature.

But if dryness, dampness, humidity, or
changes in or extremes of temperature
results in a covered peril, "we" do cover
the loss or damage caused by that
covered peril.

l.  **Voluntary Parting** -- Except as provided
under Coverage Extensions - Fraud And
Deceit, "we" do not pay for loss or
damage caused by or resulting from
voluntary parting with title to or
possession of any property because of
any fraudulent scheme, trick, or false
pretense.

m.  **Wear And Tear** -- "We" do not pay for
loss or damage caused by or resulting
from wear and tear, marring, or
scratching.

But if wear and tear, marring, or
scratching results in a covered peril, "we"
do cover the loss or damage caused by
that covered peril.

## WHAT MUST BE DONE
## IN CASE OF LOSS

1.  **Notice** -- In case of a loss, "you" must give:

    a.  "us" or "our" agent prompt notice
    including a description of the property
    involved ("we" may request written
    notice); and

    b.  notice to the police when the act that
    causes the loss is a crime.

2.  **You Must Protect Property** -- "You" must
take all reasonable steps to protect covered
property at and after an insured loss to avoid
further loss.

    a.  **Payment Of Reasonable Costs** -- "We"
    do pay the reasonable costs incurred by
    "you" for necessary repairs or emergency
    measures performed solely to protect
    covered property from further damage by
    a peril insured against if a peril insured
    against has already caused a loss to
    covered property. "You" must keep an
    accurate record of such costs. "Our"
    payment of reasonable costs does not
    increase the "limit".

    b.  **We Do Not Pay** -- "We" do not pay for
    such repairs or emergency measures
    performed on property that has not been
    damaged by a peril insured against.

3.  **Proof Of Loss** -- "You" must send "us",
within 60 days after "our" request, a signed,
sworn proof of loss. This must include the
following information:

    a.  the time, place, and circumstances of the
    loss;

    b.  other policies of insurance that may
    cover the loss;

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          **AAIS**

c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

d. changes in title of the covered property during the policy period; and

e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Replacement Cost** -- The value of covered property will be based on replacement cost as described below.

   a. **Replacement Cost Means --** Replacement cost means:

      1) the necessary and reasonable costs of materials and labor incurred to repair or replace, without deduction for depreciation, the part of the covered property that sustains direct physical loss or damage;

      2) the reasonable overhead and profit related to the covered property that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the construction, erection, or fabrication of covered "buildings or structures" in accordance with the construction contracts; and

      3) other related construction costs and expenses that are re-incurred to repair or replace the part of the covered property that sustains direct physical loss or damage but only if such costs have been included as part of the "limit" for covered "buildings or structures".

   b. **Replacement Cost Limitations --** Replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose.

   c. **Payment Limitation** -- If the part of the covered property that sustains direct physical loss or damage is repaired or replaced, the payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

Copyright, American Association of Insurance Services, Inc., 2020

2.  **Pair Or Set** -- The value of a lost or damaged article that is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3.  **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1.  **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2.  **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3.  **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., 6., and 7., under How Much We Pay, "we" pay the least of:

    a.  the amount determined under Valuation;

    b.  the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

    c.  the "limit" that applies to the covered property.

4.  **Catastrophe Limits** --

    a.  **Separate Catastrophe Limits** -- In any one occurrence, if Separate Catastrophe Limits is indicated on the "schedule of coverages", the most "we" pay is the Builders' Risk Catastrophe Limit and the Delay In Completion Catastrophe Limit.

If Separate Catastrophe Limits is indicated on the "schedule of coverages":

1)  the most "we" pay under the Builders' Risk Coverage Form is the Builders' Risk Catastrophe Limit indicated on the "schedule of coverages" regardless if an occurrence or loss involves:

    a)  one or more "buildings or structures";
    b)  one or more described "jobsites"; or
    c)  any combination of "buildings or structures", described "jobsites", or coverages described under Coverage Extensions or Supplemental Coverages; and

2)  the most "we" pay under the Delay In Completion Coverage Part is the Delay In Completion Catastrophe Limit indicated on the "schedule of coverages" regardless if an occurrence or loss involves:

    a)  one or more "buildings or structures";
    b)  one or more described "jobsites"; or
    c)  any combination of "buildings or structures", described "jobsites", Additional Construction Expenses, Additional Soft Costs or coverages described under Coverage Extensions or Supplemental Coverages.

IM 7050 07 20                    Copyright, American Association of Insurance Services, Inc., 2020                    **AAIS**

b. **Combined Catastrophe Limits** -- In any one occurrence, if Combined Catastrophe Limit is indicated on the "schedule of coverages", the most "we" pay under the Builders' Risk Coverage Form and the Delay In Completion Coverage Part is the Combined Catastrophe Limit indicated on the "schedule of coverages" regardless if an occurrence or loss involves:

1) one or more "buildings or structures";
2) one or more described "jobsites"; or
3) any combination of "buildings or structures", described "jobsites", Additional Construction Expenses, Additional Soft Costs or coverages described under Coverage Extensions or Supplemental Coverages.

5. **Coinsurance** --

a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than 100% of the estimated completed value of the covered "buildings or structures".

Coinsurance does not apply when Coinsurance Provisions Are Waived has been checked on the "schedule of coverages".

b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

1) determine the 100% expected completed value of the "buildings or structures"; this figure is based on the estimated value of the property at completion of construction had no loss occurred;
2) divide the "limit" for covered property by the result determined in b.1) above; and

3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

6. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

7. **Insurance Under More Than One Policy** --

a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

    Copyright, American Association of Insurance Services, Inc., 2020    **AAIS**

# LOSS PAYMENT

1.  **Loss Payment Options** --

    a.  **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

        1)  pay the value of the lost or damaged property;
        2)  pay the cost of repairing or replacing the lost or damaged property;
        3)  rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or
        4)  take all or any part of the property at the agreed or appraised value.

    b.  **Notice Of Our Intent To Rebuild, Repair, Or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2.  **Your Losses** --

    a.  **Adjustment And Payment Of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

    b.  **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

        1)  a satisfactory proof of loss is received; and
        2)  the amount of the loss has been established either by written agreement with "you" or by the filing of an appraisal award with "us".

3.  **Property Of Others** --

    a.  **Adjustment And Payment Of Loss To Property Of Others** -- Losses to property of others may be adjusted with and paid to:

        1)  "you" on behalf of the owner; or
        2)  the owner.

    b.  **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits brought by the owners at "our" expense.

# OTHER CONDITIONS

1.  **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

    If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

    The appraisers will then determine and state separately the amount of each loss.

    The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   Copyright, American Association of Insurance Services, Inc., 2020   AAIS

AAIS
IM 7050 07 20
Page 20 of 23

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

    a. **Your Death** -- On "your" death, "we" cover the following as an insured:

        1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
        2) "your" legal representative.

        This person or organization is an insured only with respect to property covered by this coverage.

    b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

    a. "You" or any other insured have willfully concealed or misrepresented:

        1) a material fact or circumstance that relates to this insurance or the subject thereof; or
        2) "your" interest herein.

    b. There has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

    a. "you" must notify "us" promptly if "you" recover property or receive payment;

    b. "we" must notify "you" promptly if "we" recover property or receive payment;

    c. any recovery expenses incurred by either are reimbursed first;

    d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid or any lesser amount to which "we" agree; and

    e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be prorated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration Of Limits** -- Except as indicated under Limited Fungus Coverage, a loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

IM 7050 07 20          Copyright, American Association of Insurance Services, Inc., 2020          AAIS

**AAIS**
**IM 7050 07 20**
**Page 21 of 23**

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

   a.  all of the "terms" of this coverage have been complied with; and

   b.  the suit has been brought within two years after "you" first have knowledge of the loss.

       If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while in the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** -- "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the replacement cost or actual cash value of the covered property.

## ADDITIONAL COVERAGE LIMITATIONS

1.  **Occupancy And Use** -- "We" do not provide coverage under this policy if, without "our" prior written consent, covered "buildings or structures" as described under Property Covered are:

   a.  occupied in whole or in part; or

   b.  put to its intended use.

   However, this provision does not apply if Permission To Occupy is indicated on the "schedule of coverages".

2.  **When Coverage Ceases** -- Coverage will end when one of the following first occurs:

   a.  this policy expires or is canceled;

   b.  covered "buildings or structures" are accepted by the purchaser;

   c.  "your" insurable interest in the covered property ceases;

   d.  "you" abandon construction with no intent to complete it; or

   e.  covered "buildings or structures" have been completed for more than 90 days.

## DEFINITIONS

1.  "Buildings or structures" means:

   a.  buildings;

   b.  structures;

   c.  materials and supplies that will become a permanent part of the buildings or the structures; and

   d.  foundations, excavations, grading, filling, attachments, permanent fencing, and other permanent fixtures.

2.  "Earth movement" means:

   a.  The movement of the ground, soil, sediments, substrates, or strata whether the movement is caused by an act of nature or is manmade, including but not limited to:

      1)  earthquake including aftershocks, liquefaction, or ground displacement associated with earthquake;
      2)  eruption, explosion, or effusion of a volcano;
      3)  shaking or ground rupture before, during or after a volcanic eruption;
      4)  landslide;
      5)  mine subsidence whether or not the manmade mine is currently in use; or

**IM 7050 07 20**              Copyright, American Association of Insurance Services, Inc., 2020              **AAIS**

6) any other ground movement, including sinking (other than "sinkhole collapse"), shifting, contraction, or rising of the ground including, but not limited to:

   a) erosion, expansion, shrinking;
   b) freezing or thawing;
   c) soil compaction; and
   d) movement caused by water under the surface of the ground

   that cause cracking, settling, tilting, leaning, or shifting of covered property.

b. The movement of the ground, soil, sediments, substrates, or strata resulting from any act, error or omission including but not limited to:

   1) construction or excavation activities, regardless of whether or not occurring under covered property and regardless of whether the construction or excavation was being performed at "your" request or for "your" benefit;
   2) blasting or vibration from any source;
   3) any process for removing gas; oil; minerals; water; steam; or any other natural resource, substance, or material from below the surface of the ground including, but not limited to, hydraulic fracturing (fracking), mining, drilling, or geothermal energy extraction;
   4) water injection below the surface of the ground, whether wastewater from hydraulic fracturing or any other source or water injected into underground rock for the purpose of creating geothermal energy; or
   5) carbon sequestration, biosequestration or any other process for removing carbon dioxide or other forms of carbon from the atmosphere and placed it in an underground reservoir, underground geologic formations or any other underground storage technique.

3. "Flood" means an overflowing or inundation by water of an area that was previously and normally dry or not covered by water, whether caused artificially or naturally, by human or animal forces or by an act of nature. "Flood" includes, but is not limited to:

   a. overflow of inland or tidal waters, waves, tidal waves, or tsunamis, or spray that results from any of these, all whether driven by wind or not, including but not limited to storm surge;

   b. unusual and rapid accumulation or runoff of surface waters from any source; or

   c. mudslides or mudflows if caused by:

      1) unusual and rapid accumulation or runoff of surface waters or waves; or
      2) currents of water exceeding anticipated cyclical levels.

4. "Fungus" means:

   a. a fungus, including but not limited to mildew and mold;

   b. a protist, including but not limited to algae and slime mold;

   c. wet rot and dry rot;

   d. a bacterium; or

   e. a chemical, matter, or compound produced or released by a fungus, a protist, wet rot, dry rot, or a bacterium, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

5. "Jobsite" means any location, project, or work site where "you" are in the process of constructing, erecting, or fabricating "buildings or structures".

6. "Limit" means the amount of coverage that applies.

Copyright, American Association of Insurance Services, Inc., 2020

**AAIS**
**IM 7050 07 20**
**Page 23 of 23**

7.  "Pollutant" means:

    a.  any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

    b.  electrical or magnetic emissions, whether visible or invisible, and sound emissions.

8.  "Schedule of coverages" means:

    a.  all pages labeled "schedule of coverages" or schedules that pertain to this coverage; and

    b.  declarations or supplemental declarations that pertain to this coverage.

9.  "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

10.  "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

Falling objects does not include loss to:

    a.  personal property in the open; or

    b.  the interior of "buildings or structures" or to personal property inside "buildings or structures" unless the exterior of the roofs or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

11.  "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

12.  "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

"Volcanic action" does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss or damage to the covered property.

---

**IM 7050 07 20**

This endorsement changes the
Builders' Risk Coverage
**-- PLEASE READ THIS CAREFULLY --**

# REHABILITATION AND RENOVATION COVERAGE ENDORSEMENT

**Rehabilitation And Renovation** -- Only regarding the "jobsite" indicated by the "jobsite" location number on the Rehabilitation And Renovation Schedule, all references to "building or structure" in the coverage form to which this endorsement is attached are replaced with "rehabilitation or renovation project".

## ADDITIONAL DEFINITIONS

The following definitions are added to the Definitions section:

1.  "Building materials" means materials, supplies, attachments, and fixtures that:

    a.  will become; or

    b.  since the inception date of this policy, have become

    a permanent part of the rehabilitation or renovation of an "existing building" or an extension of or addition to an "existing building".

2.  "Existing building" means a structure or building constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation.

    An "existing building" includes only those parts of a standing structure or a standing building that are intended to become a permanent part of the structure or building during and after construction, renovation, or rehabilitation.

    An "existing building" includes foundations, attachments, permanent fencing, and other permanent fixtures.

3.  "Rehabilitation or renovation project" means a project involving the construction, rehabilitation, or renovation of a structure or building by "you" or "your" contractors or subcontractors.

## PROPERTY COVERED

Only regarding the "jobsite" indicated by the "jobsite" location number on the Rehabilitation And Renovation Schedule, the Property Covered section is deleted and replaced by the following:

"We" cover the following property unless the property is excluded or subject to limitations.

1.  **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to "building materials" and "existing buildings" that are part of "your" "rehabilitation or renovation project".

2.  **Coverage Limitations --**

    a.  "We" only cover "existing buildings" when a "limit" is indicated on the Rehabilitation And Renovation Schedule for Existing Buildings.

    b.  "We" only cover "building materials" that:

        1)  will become; or
        2)  since the inception date of this policy, have become

        a permanent part of the rehabilitation or renovation of an "existing building" or an extension of or addition to an "existing building".

    c.  "We" only cover "existing buildings" and "building materials" at the "jobsite" described on the "schedule of coverages" and whose "jobsite" location number is indicated on the Rehabilitation And Renovation Schedule.

3.  **Vacant Building Limitation** -- "We" only cover a vacant "existing building" for 60 consecutive days (or the number of days indicated on the Rehabilitation And Renovation Schedule) from the inception date of this policy unless:

    a.  building permits have been obtained; and

Copyright, American Association of Insurance Services, Inc., 2012

**AAIS
IM 7070 08 12
Page 2 of 4**

b.   rehabilitation or renovation work has begun on the "existing building".

This limitation is waived when Vacant Building Limitation Waived is checked on the Rehabilitation And Renovation Schedule.

4.   **We Do Not Pay** --

a.   **Penalties** -- "We" do not pay for any penalties for:

1)   noncompletion or late completion of a "rehabilitation or renovation project" in accordance with the provisions or conditions in the construction contract; or

2)   noncompliance with any provisions or conditions in the construction contract.

b.   **Diminution In Value** -- "We" do not pay for any loss of value or any diminution in value of a "building or structure", however measured, that remains following the repair or replacement of a covered loss.

## PROPERTY NOT COVERED

The exclusion for Standing Building Or Structure is deleted and replaced by the following:

**Standing Building Or Structure** -- Except for a covered "existing building", "we" do not cover any:

1.   standing building or standing structure; or

2.   part of a standing building or standing structure

that has been wholly or partially constructed, erected, or fabricated prior to the inception of this policy.

## ADDITIONAL PROPERTY NOT COVERED

**Excavations, Grading, Filling, Pipes, Flues, And Drains** -- "We" do not cover:

1.   the cost of excavations, grading, or filling; and

2.   underground pipes, flues, and drains.

## VALUATION

The Replacement Cost provisions under Valuation are replaced by the following provisions.

1.   **Existing Building** --

a.   **Stated Value** -- If Stated Value is indicated on the Rehabilitation And Renovation Schedule for Existing Building, the value of an "existing building" that sustains direct physical loss or damage will be based on the "limit" shown for Existing Building on the Rehabilitation And Renovation Schedule.

b.   **Actual Cash Value** -- If Actual Cash Value is indicated on the Rehabilitation And Renovation Schedule for Existing Building, the value of the part of an "existing building" that sustains direct physical loss or damage will be based on the actual cash value at the time of loss (with a deduction for depreciation).

2.   **Building Materials** --

a.   **Actual Cash Value** -- If Actual Cash Value is indicated on the Rehabilitation And Renovation Schedule for "building materials", the value of "building materials" will be based on the actual cash value at the time of loss (with a deduction for depreciation).

Copyright, American Association of Insurance Services, Inc., 2012

AAIS
IM 7070 08 12
Page 3 of 4
_____

The actual cash value of "building materials" means:

1) the necessary and reasonable costs of materials and labor incurred to repair or replace, with a deduction for depreciation, the part of the covered "building materials" that sustains direct physical loss or damage;

2) the reasonable overhead and profit related to the covered "building materials" that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the "rehabilitation or renovation project" in accordance with the construction contracts; and

3) other related construction costs and expenses that are re-incurred to repair or replace the part of "building materials" that sustain direct physical loss or damage but only if such costs have been included as part of the "limit" for a covered "rehabilitation or renovation project".

b. **Replacement Cost** -- If Replacement Cost is indicated on the Rehabilitation And Renovation Schedule for "building materials", the value of "building materials" will be based on replacement cost.

Replacement cost of "building materials" means:

1) the necessary and reasonable costs of materials and labor incurred to repair or replace, without deduction for depreciation, the part of the covered property that sustains direct physical loss or damage;

2) the reasonable overhead and profit related to the covered property that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the "rehabilitation or renovation project" in accordance with the construction contracts; and

3) other related construction costs and expenses that are re-incurred to repair or replace the part of the covered property that sustains direct physical loss or damage but only if such costs have been included as part of the "limit" for a covered "rehabilitation or renovation project".

Replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose.

If the part of the covered property that sustains direct physical loss or damage is repaired or replaced, the payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

_____

## HOW MUCH WE PAY
_____

1. **Coinsurance** -- The Coinsurance provisions under How Much We Pay are replaced by the following:

   a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the coinsurance percentage of the estimated value of "building materials" at the completion of the "rehabilitation or renovation project". The applicable coinsurance percentage is indicated on the Rehabilitation And Renovation Schedule.

   b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

      1) multiply the coinsurance percentage indicated on the Rehabilitation And Renovation Schedule by the value of "building materials" at the completion of the "rehabilitation or renovation project" had no loss occurred;

      2) divide the "limit" for "building materials" by the result determined in b.1) above; and

Copyright, American Association of Insurance Services, Inc., 2012

**AAIS**
**IM 7070 08 12**
**Page 4 of 4**

3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

The most "we" pay is the amount determined in b.3) above or the Building Materials Limit, whichever is less. "We" do not pay any remaining part of the loss. This procedure applies to the total of all "building materials" to which the "limit" applies.

2. **Limits** -- The following provisions are added under How Much We Pay:

a. **Building Materials Limit** -- The most "we" pay in any one occurrence for loss to "building materials" is the Building Materials Limit indicated on the Rehabilitation And Renovation Schedule.

b. **Existing Building Limit** -- The most "we" pay in any one occurrence for loss to an "existing building" is the Existing Building Limit indicated on the Rehabilitation And Renovation Schedule.

**IM 7070 08 12**

Copyright, American Association of Insurance Services, Inc., 2012

**AAIS**
**IM 7970 08 12**
**Page 1 of 2**

**POLICY NUMBER**
HSI0005545

# REHABILITATION AND RENOVATION SCHEDULE

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

**COVERED JOBSITE**    "Jobsite" Location Number    1

(see Schedule Of Coverages for full "jobsite" location information)

**BUILDING MATERIALS LIMIT**    $ 2,200,000

**EXISTING BUILDING COVERAGE** (check one)

[X] Existing Building Limit    $ 4,673,500

[ ] Existing Building Coverage Not Provided

**CATASTROPHE LIMIT**    $ 5,000,000

**VALUATION**

**Existing Building Valuation** (check one)

[X] Stated Value

[ ] Actual Cash Value

**Building Materials Valuation** (check one)

[ ] Actual Cash Value

[X] Replacement Cost

**COINSURANCE -- Building Materials Only** (check one)

[ ] 80%        [ ] 90%        [X] 100%[ ]    Other __%

[ ] Waived

Copyright, American Association of Insurance Services, Inc., 2012

**AAIS**
**IM 7970 08 12**
**Page 2 of 2**

**VACANT BUILDING LIMITATION** (check one)

[ ]   Vacant Building Limitation applies per Rehabilitation And Renovation
      Coverage Endorsement

[ ]   Vacant Building Limitation Waived

[X]   Vacant Building Limitation applies per Rehabilitation And Renovation
      Coverage Endorsement, subject to following consecutive number of days
      from the inception date of this policy.

**Vacant Building Limitation**                          90   days

**ADDITIONAL INFORMATION**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**IM 7970 08 12**

Copyright, American Association of Insurance Services, Inc., 2012

This endorsement changes the
Builders' Risk Coverage
**-- PLEASE READ THIS CAREFULLY --**

# EQUIPMENT BREAKDOWN AND TESTING COVERAGE

Coverage provided under this endorsement is also subject to the "terms" and conditions in the Builders' Risk Coverage under the sections titled Agreement, Definitions, Property Covered, Property Not Covered, Coverage Extensions, Supplemental Coverages, Perils Excluded, What Must Be Done In Case Of Loss, Valuation, How Much We Pay, Loss Payment, Other Conditions, and Additional Coverage Limitations.

**Rehabilitation And Renovation Form** -- If this endorsement is attached to the Rehabilitation And Renovation Form, the references to "building or structure" are replaced with "rehabilitation or renovation project".

## ADDITIONAL DEFINITIONS

1.  "Accident" means a fortuitous occurrence that causes direct physical loss or damage to "covered equipment". The occurrence must be one of the following:

    a.  mechanical breakdown, including rupture or bursting caused by centrifugal force;

    b.  artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances, or wires;

    c.  explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control;

    d.  loss or damage to steam boilers, steam pipes, steam turbines, or steam engines caused by or resulting from any condition or occurrence inside such boilers or equipment; or

    e.  loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or occurrence inside such boilers or equipment.

2.  "Covered equipment"

    a.  "Covered equipment" means equipment:

        1)  that generates, transmits, or utilizes energy; or
        2)  which, during normal usage, operates under vacuum or pressure other than the weight of its contents.

        Such equipment must be covered property as described in the Property Covered section of the Builders' Risk Coverage form.

    b.  "Covered equipment" does not mean:

        1)  a building, a structure, or a compartment that covers or houses "covered equipment";
        2)  foundations that support "covered equipment";
        3)  sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;
        4)  insulating or refractory material; and
        5)  water piping, but "we" do cover:

            a)  boiler feedwater and condensate return piping; and
            b)  water piping for air conditioning or refrigeration systems.

3.  "One accident" means when an initial "accident" causes or results in other "accidents", all of the "accidents" will be considered "one accident". All "accidents" that are the result of the same occurrence will be considered "one accident".

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**IM 7083 08 10**
**Page 2 of 4**

## COVERAGE

1. **Property Damage**

   a. **Coverage** -- "We" cover direct physical loss or damage to covered property caused by or resulting from an "accident" at "your" "jobsite".

   b. **Limit** --

      1) If Property Damage Limit is indicated on the Equipment Breakdown And Testing Schedule, the Property Damage Limit on the schedule is the only "limit" that applies to loss or damage resulting from an "accident".

      2) If Refer To Builders' Risk Coverage is indicated on the Equipment Breakdown And Testing Schedule, refer to the "schedule of coverages" for the applicable "limit" for covered "buildings or structures". This "limit" will apply to loss or damage resulting from an "accident".

2. **Testing**

   a. **Coverage** -- "We" also cover direct physical loss or damage to covered property caused by or resulting from an "accident" at "your" "jobsite" during testing.

   b. **Testing Means** -- Testing as used in this endorsement means start-up, performance, stress, pressure, or overload testing of covered property.

   c. **Limit** -- The "limit" for testing is included in and is part of the "limit" for Property Damage.

3. **Delay In Completion**

   a. **Coverage** -- If the Delay In Completion Coverage Part is combined with the Builders' Risk Coverage form and Delay In Completion Coverage is indicated on the Equipment Breakdown And Testing Schedule, coverage under this endorsement is extended to the Delay In Completion Coverage Part, subject to Limits as described below.

   b. **Limits** --

      1) If Delay In Completion Limits are indicated on the Equipment Breakdown And Testing Schedule, the Delay In Completion Limits on the schedule are the only "limits" that apply to a "delay" resulting from an "accident".

      2) If Refer To Delay In Completion Coverage Schedule is indicated on the Equipment Breakdown And Testing Schedule, refer to the Delay In Completion Schedule for the applicable "limits" for covered "buildings or structures". These "limits" will apply to a "delay" resulting from an "accident".

      3) Refer to Delay In Completion Coverage Part for a definition of "delay".

4. **We Do Not Pay** -- "We" do not pay for any penalties for non-completion or non-compliance with any contract provisions or conditions.

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**IM 7083 08 10**
**Page 3 of 4**

## COVERAGE EXTENSIONS

Refer to the Builders' Risk Coverage form for a description of Coverage Extensions and their applicable "limits". If the Delay In Completion Coverage Part is combined with the Builders' Risk Coverage form and Delay In Completion Coverage is indicated on the Equipment Breakdown And Testing Schedule, also refer to the Delay In Completion Coverage Part for a description of additional Coverage Extensions and their applicable "limits".

## SUPPLEMENTAL COVERAGES

Except for the addition of Pollutants as described below, refer to the Builders' Risk Coverage form for a description of Supplemental Coverages and their applicable "limits". If the Delay In Completion Coverage Part is combined with the Builders' Risk Coverage form and Delay In Completion Coverage is indicated on the Equipment Breakdown And Testing Schedule, also refer to the Delay In Completion Coverage Part for a description of an additional Supplemental Coverage and its applicable "limit".

**Pollutants**

1.  **Coverage** -- "We" pay for the additional cost to repair or replace covered property because of contamination by "pollutants". This includes the additional expenses to clean up or dispose of such property.

2.  **Additional Expenses Mean** -- Additional expenses mean those beyond what would have been required had no "pollutants" been involved.

3.  **Contamination By Pollutants** -- "We" will also pay for additional loss as described under Delay In Completion Coverage Part caused by contamination by "pollutants".

4.  **Limit** -- The most "we" pay for loss or damage under this Supplemental Coverage is $25,000. If a different "limit" is indicated on the Equipment Breakdown And Testing Schedule, that "limit" will apply instead of the "limit" shown above.

    The "limit" for this Supplemental Coverage is separate from, and not part of, the applicable "limit" for coverage described under Coverage.

## PERILS COVERED

"We" cover risks of direct physical loss or damage caused by or resulting from an "accident" to "covered equipment" unless the loss is limited or caused by a peril that is excluded.

## ADDITIONAL PERILS EXCLUDED

The following excluded perils are added to the Perils Excluded section in the Builders' Risk Coverage form.

1.  **Software** -- "We" do not pay for loss caused by any defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality, or other condition within or involving data, data processing software, or software media of any kind.

    But if an "accident" results, "we" will pay for the resulting loss or damage caused by that "accident".

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**IM 7083 08 10**
**Page 4 of 4**

2. **Misalignment Or Miscalibration** -- "We" do not pay for loss caused by misalignment, miscalibration, tripping off-line, or any condition which can be corrected by:

   a. resetting, tightening, adjusting, or cleaning; or

   b. performance of maintenance.

   But if an "accident" results, "we" will pay for the resulting loss or damage caused by that "accident".

## HOW MUCH WE PAY

The following Deductible and Waiting Period provisions are added to the provisions of How Much We Pay.

1. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the Equipment Breakdown And Testing Schedule in any "one accident".

   a. If the Delay In Completion Coverage Part is combined with the Builders' Risk Coverage form and Delay In Completion Coverage is indicated on the Equipment Breakdown And Testing Schedule, Additional Construction Expenses are included as part of the Equipment Breakdown deductible provisions.

   b. If deductibles vary by type of "covered equipment" and more than one type of equipment is involved in any "one accident", the highest deductible will apply. Unless the Equipment Breakdown And Testing Schedule indicates that a single deductible applies to all Equipment Breakdown coverages, multiple deductibles may apply to any "one accident".

2. **Waiting Period** -- If a waiting period is indicated on the Equipment Breakdown And Testing Schedule for Delay In Completion, "we" do not pay for:

   a. Additional Soft Costs;

   b. loss of rental income; or

   c. loss of net income

   until after the number of days indicated on the schedule have passed.

   This waiting period does not apply to Additional Construction Expenses.

## ADDITIONAL CONDITIONS

**Suspension** -- When any "covered equipment" is discovered to be in, or exposed to a dangerous situation or condition, any representative of "ours" may immediately suspend the insurance coverage against loss from an "accident" to that equipment. The suspension will not apply to any other covered peril under the Builders' Risk Coverage form.

"We" can do this by mailing or delivering a written notice of suspension to "your" address as shown in the declarations, or at the address where the "covered equipment" is located.

Once so suspended, "your" insurance under this endorsement can be reinstated only by written notice from "us". If "your" insurance under this endorsement is so suspended, "you" will get a pro rata premium refund. But the suspension is effective even if "we" have not yet offered or made a refund.

**IM 7083 08 10**

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**IM 7095 01 12**
**Page 1 of 3**

# EQUIPMENT BREAKDOWN AND TESTING SCHEDULE

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

**COVERAGES**                                                    **"LIMITS"**

**Property Damage** (check one)

[ ]  Refer To Builders' Risk Coverage

[X]  Property Damage Limit                          $ _5,000,000_

**Testing**

- X  Coverage included as part of Property Damage

**Delay In Completion** (check one)

[ ]  Coverage not provided under Equipment
     Breakdown And Testing Coverage

[X]  Delay In Completion Coverage (check one)

    [X]  Refer To Delay In Completion Coverage Schedule

    [ ]  Delay In Completion Limits

        Additional Construction Expenses           $ _____

        Additional Soft Costs

        -  30-Day Limit                              $ _____

        -  Occurrence Limit                         $ _____

        Rental Income                               $ _____

        Income Coverage                             $ _____

**COVERAGE EXTENSIONS**

--  Refer to Builders' Risk Coverage for other
    Coverage Extensions (if applicable)

--  Refer to Delay In Completion Coverage for
    other Coverage Extensions (if applicable)

Copyright, American Association of Insurance Services, Inc., 2012

**AAIS**
**IM 7095 01 12**
**Page 2 of 3**

| SUPPLEMENTAL COVERAGES | "LIMITS" |
|---|---|
| -- Pollutants | $ 25,000 |
| -- Refer to Builders' Risk Coverage for other Supplemental Coverages (if applicable) | |
| -- Refer to Delay In Completion Coverage for other Supplemental Coverages (if applicable) | |

**DEDUCTIBLES**

**Property Damage** (including Testing)

| Deductible Amount | $ 10,000 |
|---|---|

Other (describe)

|  | $ |
|---|---|
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

**Delay In Completion** (if applicable)

Waiting Period (check one)

[ ] Waiting Period                                                          _____ days

[ ] Waiting Period does not apply

Copyright, American Association of Insurance Services, Inc., 2012

**AAIS**
**IM 7095 01 12**
**Page 3 of 3**

**OTHER CONDITIONS** (describe)

_____

_____

_____

_____

_____

_____

_____

_____

_____

**IM 7095 01 12**

Copyright, American Association of Insurance Services, Inc., 2012

# INSURANCE POLICY
of
# The Burlington Insurance Company

A Stock Company

Home Office, Administrative Office and Claim Office
City Place II, 185 Asylum Street, 7th Floor, Hartford, CT  06103
Tel. 860-723-4150 or
Toll Free 1-800-328-8719



IFG
Companies

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representatives.

Secretary

President

IFG-I-0002 08 21

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE BURLINGTON INSURANCE COMPANY, a corporation; and DOES 1-10, inclusive

**Electronically FILED by
Superior Court of California,
County of Los Angeles
4/17/2025 2:46 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Munoz, Deputy Clerk**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

HORIZON DAHLIA, LLC, a California limited liability company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles County Superior Court

111 N Hill Street, Los Angeles, CA 90012

| CASE NUMBER:<br>*(Número del Caso):* |
|---|
| **25STCV11283** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ivo Labar, Sawyer & Labar LLP, 1700 Montgomery Street, Suite 108, San Francisco, CA, 94111 415-262-3820

| DATE:<br>*(Fecha)*   04/17/2025 | Clerk, by   David W. Slayton, Executive Officer/Clerk of Court , Deputy<br>*(Secretario)* _____ A. Munoz *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ivo Labar (203492); Rebecca MacLaren (211788)<br>Sawyer & Labar LLP, 1700 Montgomery Street, Suite 108 San Francisco, CA 94111<br><br>TELEPHONE NO.: 415-262-3820          FAX NO.:<br>EMAIL ADDRESS: labar@sawyerlabar.com; maclaren@sawyerlabar.com<br>ATTORNEY FOR *(Name):* Plaintiff Horizon Dahlia, LLC | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>4/17/2025 2:46 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By A. Munoz, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME:

CASE NAME:
Horizon Dahlia, LLC v. The Burlington Insurance Company et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] Unlimited    [ ] Limited<br>(Amount         (Amount<br>demanded        demanded is<br>exceeds $35,000)   $35,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 25STCV11283<br><br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[x] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 3
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 17, 2025

Ivo Labar
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Horizon Dahlia, LLC v. The Burlington Insurance Company, et al. | 25STCV11283 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.   Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.   Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | A <br> Civil Case Cover Sheet Case Type | B <br> Type of Action <br> (check only one) | C <br> Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| LASC CIV 109 Rev. 01/23 | CIVIL CASE COVER SHEET ADDENDUM | LASC Local Rule 2.3 |
|---|---|---|
| For Mandatory Use | AND STATEMENT OF LOCATION | |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Horizon Dahlia, LLC v. The Burlington Insurance Company, et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☑ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Horizon Dahlia, LLC v. The Burlington Insurance Company, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation          Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| LASC CIV 109 Rev. 01/23<br>For Mandatory Use | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC Local Rule 2.3 |
|---|---|---|

| SHORT TITLE<br>Horizon Dahlia, LLC v. The Burlington Insurance Company, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| LASC CIV 109 Rev. 01/23<br>For Mandatory Use | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC Local Rule 2.3 |
|---|---|---|

| SHORT TITLE | CASE NUMBER |
|---|---|
| Horizon Dahlia, LLC v. The Burlington Insurance Company, et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS:<br>12413, 12421-12423 and 12414<br>Dahlia Avenue, El Monte, California |
|---|---|
| **CITY:** El Monte    **STATE:** CA    **ZIP CODE:** 91732 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __04/17/2025__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| LASC CIV 109 Rev. 01/23<br>For Mandatory Use | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC Local Rule 2.3 |
|---|---|---|

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/17/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ A. Munoz _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>25STCV11283 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| | Steve  Cochran | 16 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 04/17/2025 _____
    (Date)                                         By A. Munoz _____, Deputy Clerk

LACIV 190 (Rev 6/18)        **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION

The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br><br>Stanley Mosk Courthouse<br><br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/21/2025<br>David W. Slayton, Executive Officer/Clerk of Court<br><br>By: _____ P. Figueroa _____ Deputy |
| PLAINTIFF(S):<br><br>Horizon Dahlia, LLC | |
| DEFENDANT(S):<br><br>The Burlington Insurance Company | |
| **ORDER TO SHOW CAUSE HEARING** | CASE NUMBER:<br><br>25STCV11283 |

To the party / attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on <u>07/01/2025</u> at <u>8:30 AM</u> in department <u>16</u> of this court, <u>Stanley Mosk Courthouse</u> _____, and show cause why sanctions should not be imposed for:

[✔]    Failure to file proof of service.

Failure to comply or appear may result in sanctions pursuant to one or more of the following: California Rules of Court, rule 2.30 and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[✔]    To avoid a mandatory appearance all required documents must be filed at least 5 days prior to the date of the hearing.

Dated: <u>04/21/2025</u>

_____
Steve Cochran / Judge
Judicial Officer

**ORDER TO SHOW CAUSE HEARING**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/21/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ P. Figueroa _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Horizon Dahlia, LLC | |
| DEFENDANT/RESPONDENT:<br>The Burlington Insurance Company | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>25STCV11283 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Failure to File Proof of Service upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Ivo Labar
Sawyer & Labar LLP
1700 Montgomery St., Suite 108
San Francisco, CA 94111

Rebecca MacLaren
Sawyer & Labar LLP
1700 Montgomery Street
Suite 108
San Francisco, CA 94111

David W. Slayton, Executive Officer / Clerk of Court

Dated: 04/22/2025

By: P. Figueroa
Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Horizon Dahlia, LLC

DEFENDANT:
The Burlington Insurance Company

## NOTICE OF CASE MANAGEMENT CONFERENCE

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

04/21/2025

David W. Slayton, Executive Officer/Clerk of Court

By: _____ P. Figueroa _____ Deputy

CASE NUMBER
25STCV11283

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 07/21/2025      Time: 8:30 AM      Dept.: 16

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 04/21/2025

_____
Judicial Officer
Steve Cochran / Judge

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Rebecca MacLaren
1700 Montgomery Street
Suite 108
San Francisco, CA 94111

David W. Slayton, Executive Officer / Clerk of Court

Dated: 04/21/2025

By P. Figueroa
_____
Deputy Clerk

LASC LACIV 132 Rev. 01/23
For Optional Use

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/21/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ P. Figueroa _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Horizon Dahlia, LLC | |
| DEFENDANT/RESPONDENT:<br>The Burlington Insurance Company | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>25STCV11283 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Ivo Labar
Sawyer & Labar LLP
1700 Montgomery St., Suite 108
San Francisco, CA 94111

Rebecca MacLaren
Sawyer & Labar LLP
1700 Montgomery Street
Suite 108
San Francisco, CA 94111


David W. Slayton, Executive Officer / Clerk of Court

Dated: 04/22/2025

By: __P. Figueroa_____
       Deputy Clerk


**CERTIFICATE OF MAILING**



## Superior Court of California, County of Los Angeles
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

### WHAT IS ADR?
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

### TYPES OF ADR

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

### ADVANTAGES OF ADR

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

### DISADVANTAGES OF ADR

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

### WEBSITE RESOURCES FOR ADR

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**<u>Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)</u>**

Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit* https://my.lacourt.org/odr.

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit* https://dcba.lacounty.gov/countywidedrp.

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at* ADRCivil@lacourt.org.

SAWYER & LABAR LLP
IVO LABAR, State Bar No. 203492
  labar@sawyerlabar.com
REBECCA MACLAREN, State Bar No. 211788
  maclaren@sawyerlabar.com
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

Attorneys for Plaintiff
HORIZON DAHLIA, LLC



## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| HORIZON DAHLIA, LLC, a California limited liability company,<br><br>       Plaintiff,<br><br>     v.<br><br>THE BURLINGTON INSURANCE COMPANY, a corporation; and DOES 1-10, inclusive,<br><br>       Defendants. | Case No. 25STCV11283<br><br>Assigned for All Purposes to:<br>Hon. Steve Cochran, Dept. 16<br><br>**NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE**<br><br>Action Filed:    April 17, 2025<br>Trial Date:     None |

NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE

TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 1, 2025, the Court, upon its own motion, advanced the Case Management Conference scheduled for July 21, 2025, and continued it to **September 24, 2025, at 8:30 a.m.** in Department 16 at Stanley Mosk Courthouse, located at 111 North Hill Street, Los Angeles, California. A true and correct copy of the Court's minute order is attached hereto as Exhibit A.

DATED: July 1, 2025                    SAWYER & LABAR LLP

By: _____

Rebecca MacLaren
Attorneys for Plaintiff
HORIZON DAHLIA, LLC

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TEL:PH+CNE: 415.262.3820
www.sawyerlabar.com

2

NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE

# EXHIBIT A

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 16

**25STCV11283**                                                          July 1, 2025
**HORIZON DAHLIA, LLC vs THE BURLINGTON**                                8:30 AM
**INSURANCE COMPANY**

Judge: Honorable Steve Cochran                CSR: None
Judicial Assistant: A. Robledo                ERM: None
Courtroom Assistant: P. Figueroa              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Rebecca MacLaren (Telephonic)

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Failure to File Proof of Service

The matter is called for hearing.

The Court and counsel confer regarding the status of the case.

Counsel state that the complaint was served and defendants still have time to respond.

The Order to Show Cause is discharged.

On the Court's own motion, the Case Management Conference scheduled for 07/21/2025 is advanced to this date and continued to 09/24/2025 at 08:30 AM in Department 16 at Stanley Mosk Courthouse.

Counsel for the Plaintiff is directed to give notice.

Minute Order                                                            Page 1 of 1

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 1700 Montgomery Street, Suite 108, San Francisco, CA 94111.

On July 1, 2025, I served true copies of the following document(s) described as **NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE** on the interested parties in this action as follows:

The Burlington Insurance Company
185 Asylum St, Fl 7
Hartford, CT 06103

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Sawyer & Labar LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Sausalito, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 1, 2025, at Sausalito, California.

_____
Sarah Guzman

NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE